Argued and submitted January 31, 2001, affirmed October 30, 2002

STATE OF OREGON,
*Respondent,*

*v.*

VERNON WAYNE SHIELDS,
*Appellant.*

98CR1244; CA A105000

56 P3d 937

Hugh C. Downer, Jr., Judge.

Jennelle Meeks Barton, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

DEITS, C. J.

* Deits, C. J., *vice* Ceniceros, S. J.

## DEITS, C. J.

Defendant appeals from a judgment of conviction of stalking. ORS 163.732. He assigns as error the trial court's denial of his motion for judgment of acquittal and the court's refusal to give one of his requested jury instructions. We affirm.

Because a jury found defendant guilty, we set out the facts in the light most favorable to the state. *State v. Tucker*, 315 Or 321, 325, 845 P2d 904 (1993). We first set out facts in the record that, while not directly related to the events that led to this prosecution, provide context for defendant's relationship with the victim. *See Boyd v. Essin*, 170 Or App 509, 518, 12 P3d 1003 (2000), *rev den*, 331 Or 674 (2001) (conduct alleged in stalking prosecution might take on a different character when viewed against the backdrop of previous assaultive behavior).

Defendant and the victim became acquainted in 1996. Defendant also established relationships with the victim's two sons, her brother, and her mother. When defendant expressed interest in an intimate relationship with the victim, she told him that she was not interested. On at least one occasion, defendant came to the victim's house when he was intoxicated and refused to leave after the victim told him to do so. Defendant once came to the victim's home and pushed the door open and into the victim while screaming at her. The victim also once saw defendant looking into her bedroom window. Some time in 1997, the victim told defendant not to call her on the telephone any more. The victim became frightened of defendant because "[h]e was calling me obsessively and threatening to hurt people around me and just so out of his mind drunk that I felt very, very frightened and intimidated by his threats." Defendant was convicted of criminal trespass and stalking in connection with that conduct, and he was incarcerated as a result.

As a condition of his release on probation for those convictions, defendant was prohibited from going to the victim's home or contacting her. After being released, however, defendant returned to the victim's home, sent her mail, and called her on the telephone. Because of defendant's telephone

calls, the victim has changed her telephone number three times. Defendant was reincarcerated for violating his probation; while incarcerated, he continued to send the victim mail and to call her. Defendant continued to pursue an intimate relationship with the victim, including offering to marry her and suggesting a sexual relationship, after she had made it clear that she was not interested.

We now turn to the facts that led to defendant's conviction in this case. On September 29, 1998, the day that he was released from prison, defendant again called the victim's home. The victim and her mother answered the telephone at the same time; the victim recognized defendant's voice, so she pretended that she was not on the line. Defendant told the victim's mother that nobody could tell him what to do and that "I can call there and I can come over if I want to, too." The victim answered at least 10 additional telephone calls from defendant. During some of those calls, defendant repeated to the victim that, because he had been released, he could come to her home. During each conversation, the victim told defendant not to call her again.

The victim described the contents of three telephone conversations with defendant as follows:

"The first time was that his dog died and that he was really shooken [sic] up about his dog and that his life was a misery and please listen to me and talk to me.

"* * * * *

"The second time is that he was still down, that his uncle died or something; that please listen to me again; in bad shape; drunk and that he wanted me to listen to him and then I got upset at him and said, 'Why are you hurting your father this way? Why are you doing this to us?' And he says, 'Well, this is what my father thinks of you' and he told me what his father thought of me.

"* * * * *

"He said that [his father] thinks you're a lying F-bitch and I freaked out and hung up on him.

"[The third conversation] is when he wanted to contact my son and where he's at. Wanted to get a hold of him."

On several other occasions, the victim answered the telephone and hung up without saying anything either when she heard defendant's voice or when she heard nothing. The victim explained that she was afraid of defendant because he had been "obsessed" with her for nearly two years and she believed he would eventually "try to force his way on me."

Defendant was charged with and convicted of one count of stalking, ORS 163.732, and three counts of telephonic harassment, ORS 166.090. On appeal, he challenges only the stalking conviction.

■　　Defendant first assigns error to the trial court's denial of his motion for judgment of acquittal. According to defendant, the conduct that the state alleged was expressive, and, consequently, the state was required to put on evidence that his communications constituted a "threat." Defendant contends that none of the state's evidence showed that he made a "threat" to the victim, and, therefore, he was entitled to a judgment of acquittal.[1] The state responds with two arguments. First, the state contends that the telephone calls in which the victim hung up either when she heard defendant's voice or when she heard nothing did not involve communication and, accordingly, did not have to constitute "threats" to be the type of contact proscribed by ORS 163.732. Second, the state argues that the remaining telephone calls—those in which defendant and the victim had conversations—did constitute "threats" for purposes of ORS 163.732.

■　　We review a trial court's denial of a motion for a judgment of acquittal to determine whether, viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873

---

[1] In his brief and at oral argument, defendant also argued that the state presented insufficient evidence of objectively reasonable alarm as required by ORS 163.732(1)(b). Defendant's motion for judgment of acquittal raised only the argument that the state had not presented evidence that his expressive conduct satisfied the narrowing construction of *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999). Because defendant did not preserve any claim of error regarding the sufficiency of the state's evidence of objectively reasonable alarm, we do not address that argument. ORAP 5.45(4); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).

P2d 316 (1994). The essential elements of the crime of stalking are set out in ORS 163.732, which provides, in part:

"(1)   A person commits the crime of stalking if:

"(a)   The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

A person may be convicted of stalking when that person knowingly alarms or coerces another person by making repeated and unwanted contacts with that person. ORS 163.732(1)(a). The contact may consist of, among other things, speaking to the other person and sending or making written communications of any kind to the other person. ORS 163.730(3)(d), (e). Additionally, the state must prove that the victim was in fact alarmed or coerced as a result of the repeated and unwanted contacts and that the victim's apprehension about personal safety was objectively reasonable.

■       Because "contact" as used in ORS 163.732(1)(a) may include writing or speech, the Supreme Court explained in *State v. Rangel*, 328 Or 294, 301, 977 P2d 379 (1999), that ORS 163.732 restricts expression, at least in part. A statute that reaches expression privileged under Article I, section 8, of the Oregon Constitution is overbroad. The court in *Rangel* concluded that ORS 163.732 is not overbroad, however, because the phrase "knowingly alarms or coerce" limits any punishable expression to expression that consists of unambiguous, unequivocal communications, specific to the addressee, that instill in the addressee a fear of imminent and serious personal violence from the speaker and that are objectively likely to be followed by unlawful acts. *Rangel*, 328 Or at 303-06.

Defendant argues that all of his alleged conduct was expressive and that the state failed to prove that at least two instances of that conduct were threats specifically addressed to the victim. *See Rangel*, 328 Or at 300 ("repeated" means "at least two"). The state responds that several of defendant's acts were not expressive and, accordingly, the state was not required to prove that they were "threats." *See Boyd*, 170 Or App at 514 (nonexpressive contacts need not meet "more stringent" standard explained in *Rangel*). The state alternatively argues that those of defendant's contacts with the victim that did involve expression consisted of threats specifically directed to the victim and, accordingly, were not privileged.

■■ We need not decide whether defendant's expressive contacts rise to the level that *Rangel* requires, because there was sufficient evidence of nonexpressive contacts to allow the trial court to deny defendant's motion for judgment of acquittal. On more than one occasion, the victim answered phone calls from defendant during which he did not speak.[2] Those calls were nonexpressive acts. Although making telephone calls without speaking is not within the express terms of ORS 163.730(3)(a) through (k), that is not dispositive, because that list of "contacts" is illustrative, not exhaustive. ORS 163.730(3) (" 'Contact' includes but is not limited to [the conduct listed]."). As we explained in *Boyd*, 170 Or App at 517, "[i]t is sufficient [for conduct to be a 'contact' for purposes of ORS 163.730] if the act, when learned, gives rise to an unwanted relationship or association between [the victim and the defendant]." Here, when the victim answered telephone calls from defendant during which he did not speak, that conduct created a relationship or association between them that the victim clearly did not want, as shown by her telling defendant during every telephone conversation not to call her again. The trial court did not err in denying defendant's motion for judgment of acquittal.

---

[2] In his second assignment of error, defendant contends in passing that the state failed to prove that defendant made any hang-up calls to the victim. Defendant's motion for judgment of acquittal, however, did not raise that issue, and so it is not preserved for appeal. *State v. Stroup*, 290 Or 185, 204, 620 P2d 1359 (1980); *State v. White*, 53 Or App 856, 861, 632 P2d 1363 (1981).

In his second assignment of error, defendant argues that the trial court erred in refusing to give one of his requested jury instructions. Defendant requested the following instruction:

"Under Oregon law, in order to find Defendant guilty of stalking, the State must prove that where the alleged activity is carried out by communication [*sic*] means, proof of stalking requires establishment of actual or substantive threat."

The record does not reflect the trial court's reasons for not giving that instruction.

According to defendant, because the contacts that the state alleged were expressive, he was entitled to have the jury instructed about the narrowing construction placed on ORS 163.732 in *Rangel*. First, the state responds that, because some of the alleged contacts were nonexpressive, "no *Rangel* issue exists." Second, the state contends that the instructions given by the trial court—instructions based on the actual wording of ORS 163.732 and ORS 163.730—were sufficient because the Supreme Court in *Rangel* derived its narrowing construction from the statute itself.

We begin by noting that, although it is possible that the jury convicted defendant based on nonexpressive contacts only, the jury was also asked to consider evidence about expressive contacts. Accordingly, the state's contention that there is no "*Rangel* issue" is not well taken. *Cf. State v. Maxwell*, 165 Or App 467, 477, 998 P2d 680 (2000), *rev den*, 334 Or 632 (2002) (where *none* of the alleged contacts involved expression, the defendant was not entitled to instruction about what kind of threat was required). Even if defendant was entitled to an instruction beyond the wording of ORS 163.732 and ORS 163.730 that explained the requirements for convicting him with respect to expressive contacts, however, the trial court did not err in declining to give the instruction that defendant requested.

A trial court does not err in declining to give a requested instruction unless that instruction would be correct "in the very terms in which it was proposed." *State v. Francis*, 284 Or 621, 626, 588 P2d 611 (1978). *See also, e.g.,*

*State v. Moine*, 128 Or App 530, 535, 877 P2d 94, *rev den*, 320 Or 492 (1994) (trial court correctly refused to give instruction that was inaccurate statement of law bearing on theory at trial). Defendant's requested instruction here would have told the jury that a conviction for stalking based on expression requires establishment of "actual or substantive threat." In light of the Supreme Court's holding in *Rangel* that, "under ORS 163.732(3), a contact based on communication must consist of a threat [of imminent and serious physical violence] that convincingly expresses *to the addressee* the intention that it will be carried out, and that the actor has the ability to do so[,]" 328 Or at 306 (emphasis in original), defendant's requested instruction was incomplete or incorrect in at least two respects.

■      First, the word "threat," without an indication of what kind of threat suffices, is an incomplete statement of the law. *Cf. Thomas v. Inman*, 282 Or 279, 289, 578 P2d 399 (1978) (trial court did not err in declining to give instructions that were incomplete statements of the law). Not all threats are the types of expression that are not privileged under the Oregon Constitution and accordingly may support a conviction for stalking. As the Supreme Court observed in *Rangel*, "*some* threats constitute protected speech." 328 Or at 301 (emphasis added). As the court continued to explain, other threats—namely "communication[s] that instill[ ] in the addressee a fear of imminent and serious personal violence from the speaker, [are] unequivocal, and [are] objectively likely to be followed by unlawful acts"—are not protected speech. *Id.* at 303. *See also State v. Moyle*, 299 Or 691, 702-05, 705 P2d 740 (1985) (threats to commit nonviolent crimes such as embezzlement might be constitutionally privileged, while threats of the types proscribed by *former* ORS 166.065(1)(d) (1985), *renumbered by* Or Laws 1987, ch 806, § 3, are not); *Webster's Third New Int'l Dictionary* 2382 (unabridged ed 1993) (common meaning of "threat" connotes "something impending," that is usually, but not necessarily, "undesirable or unpleasant").

Second, defendant's instruction refers to an "actual or substantive threat." Neither ORS 163.730 nor ORS 163.732 contains that phrase or any of the words in it. Nor

does either our or the Supreme Court's opinion in *Rangel* contain that phrase, the word "substantive," or the phrase "actual threat." The Supreme Court has referred to "actual alarm" in the context of discussing the requirement in ORS 163.732(1)(c) that the victim experience alarm—*i.e.*, "actual alarm"—in contrast to the requirement in ORS 163.732(1)(b) that the alarm be objectively reasonable—*i.e.*, "reasonable alarm." *Rangel*, 328 Or at 306. We need not now decide whether it would be an accurate statement of the law to say that the threat, as well as the alarm, must be "actual" to support a stalking conviction based on expressive conduct. It is enough that there is nothing in the statutes or the cases construing them that suggests that a "substantive" threat would be sufficient. In fact, we are not certain what a "substantive threat" would be. *See Webster's* at 2280 (defining "substantive" to mean "having the character of an independent self-subsistent entity or thing : existing in its own right : not derivative or dependent" or "having the character or status of or referring to something that is real rather than apparent"). As proposed by defendant, the instruction was not a correct statement of law and, moreover, could have confused the jury. *Cf. State v. Williams*, 313 Or 19, 39, 828 P2d 1006, *cert den*, 506 US 858 (1992) (giving an instruction containing a confusing phrase might be reversible error if it left the jury without guidance about the proper standard to apply). The trial court did not err by declining to give defendant's proposed jury instruction.

Affirmed.