Submitted July 31, affirmed November 12, 2008, petition for review denied January 13, 2009 (345 Or 618)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**RUSSELL MARVIN JONES,**
*Defendant-Appellant.*

Multnomah County Circuit Court
060130196; A132766

196 P3d 97

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Alderman, Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Richardson, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his convictions for first-degree theft, ORS 164.055, and unauthorized use of a vehicle, ORS 164.135.[1] Defendant asserts that the trial court erred in denying his motions for a judgment of acquittal on both charges on the ground that the state failed to adduce evidence that he had a culpable mental state with respect to certain material elements of each offense. The state responds that a culpable mental state does not apply to those elements and that its evidence was sufficient to support a conviction on both charges. We affirm.

In addressing defendant's challenges to the sufficiency of the evidence, we view the facts, including reasonable inferences to be drawn from them, in the light most favorable to the prevailing party, in this case, the state. *State v. Shields*, 184 Or App 505, 509, 56 P3d 937 (2002), *rev den*, 335 Or 355 (2003). Defendant was one of three men who, on the morning of January 11, 2006, drove a truck to the Blue Flame Oil Company facility in Portland. When the men arrived at the facility, defendant and another passenger, Meyrick, got out of the vehicle and hitched a trailer to the truck; the driver, Tellegen, did not get out of the vehicle. On the trailer was a piece of equipment called a "skid steer," which is a type of front-end loader used in excavation. The trailer and skid steer were owned by Blue Flame Oil. The three men drove to the rural residence of Jansik, for whom

---

[1] ORS 164.055 provides, in part:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case[.]"

ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

ORS 164.135 provides, in part:

"(1) A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner[.]"

Meyrick had worked at one time. Jansik was not acquainted with defendant or Tellegen. One of the men asked Jansik if he was interested in buying a piece of equipment like the skid steer they had with them. Jansik declined, but told the men that a tire on the trailer was going flat and that they could find a compressor to inflate it at another home down the road. By that time, Tellegen had become concerned that his truck was struggling to tow the trailer and skid steer, so the men stopped, drove the skid steer off the trailer, and left it by the side of the road. The men abandoned the trailer further down the road and returned to Tellegen's residence in Portland.

In the meantime, Blue Flame Oil's owner, Love, discovered that the skid steer and trailer were missing. A company employee had seen the men hitching up the trailer and, finding that activity suspicious, had written down the license number of the truck. Love called the police, and he also contacted a friend who was able to give him the address of the registered owner of the truck. Love went to that address—Tellegen's home—and saw the truck; he again called the police, who arrived and questioned Tellegen and the other men. Officers took defendant to a police station and questioned him. Defendant told the officers that he had to do "damage control" and that "I don't want to incriminate myself by telling you where the trailer is. I can't tell you specifics without getting a label." Defendant evaded questions about Meyrick's role in the episode, and he insisted that Tellegen hadn't done anything wrong. Defendant told the officers that he could indicate where the trailer was located on a map. After being given a map, defendant pointed to a location in rural Clackamas County. Police found the skid steer at that location, less than a quarter mile from Jansik's property. The trailer was found nearby. The skid steer had been washed, and its rear window and serial number were missing. The trailer tire, which Love knew had been nearly flat, had been inflated. According to Love, the skid steer was worth $14,000, and he had paid $2,500 to purchase the trailer.

Defendant was indicted and tried before a jury on one count of first-degree aggravated theft and one count of

unauthorized use of a vehicle.[2] At the close of the state's case, defendant moved for a judgment of acquittal on both counts. With respect to the aggravated theft count, defendant asserted that the state was required, but had failed, to prove that he *knew* the skid steer and trailer were worth more than $10,000, as required by ORS 164.057(1)(b). With respect to the unauthorized use of a vehicle charge, defendant argued that the state was required, but had failed, to prove that defendant knew that the trailer he had helped hitch to Tellegen's truck was a "vehicle" within the meaning of ORS 164.135.

Relying on our decision in *State v. Rutley*, 202 Or App 639, 123 P3d 334 (2005), *rev'd in part*, 343 Or 368, 171 P3d 361 (2007), the trial court concluded that the state was required to prove that defendant had a culpable mental state with respect to the value of the stolen equipment for purposes of the aggravated first-degree theft count and the lesser-included offense of first-degree theft. The court further concluded that there was no evidence that defendant knew that the equipment was worth more than $10,000, but that the jury could find that defendant knew that the equipment was worth more than $750. Accordingly, the court granted defendant's motion with respect to the aggravated first-degree theft count, but denied defendant's motion with respect to the lesser-included first-degree theft charge. Based on our decision in *Rutley*, the court also concluded, with respect to the unauthorized use of a vehicle count, that the state was required to prove that defendant *knew* the trailer was a "vehicle." Because the court concluded that there was sufficient evidence to show that defendant had such knowledge, it denied defendant's motion for a judgment of acquittal on that charge. The jury convicted defendant of both offenses, and this appeal followed.

---

[2] ORS 164.057 provides, in part:

"(1) A person commits the crime of aggravated theft in the first degree, if:

"(a) The person violates ORS 164.055 with respect to property, other than a motor vehicle used primarily for personal rather than commercial transportation; and

"(b) The value of the property in a single or aggregate transaction is $10,000 or more."

Defendant frames his argument on appeal as a challenge to the sufficiency of the evidence supporting his convictions. In his view, the jury must have impermissibly "stack[ed] inferences" from the evidence in order to find that he knew the skid steer and trailer were worth at least $750, and that he knew the trailer was a "vehicle." Defendant also argues that the evidence was insufficient to show that he knew the skid steer and trailer did not belong to Jansik and that he therefore lacked the intent to deprive the owner of that property.[3] The state frames the issues differently. The state contends that the trial court erred in concluding that it was required to prove that defendant had a culpable mental state with respect to the pertinent elements of the charged offenses. Viewed accordingly, the state asserts, the evidence in the record was sufficient to support defendant's convictions.

■■    Because it is dispositive, we first address the state's argument. Whether defendant's knowledge of material elements of the charged offenses must be proved is a question of statutory interpretation, which we review for errors of law. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). In each instance, the question is "[d]id the legislature intend to require proof of a culpable mental state * * * [and w]ould requiring such a showing produce such incongruous—and, by extension, legislatively 'unintended'— results that the legislature could not have intended such a showing?" *State v. Engen*, 164 Or App 591, 603, 993 P2d 161 (1999), *rev den*, 330 Or 331 (2000). We begin with the offense of first-degree theft.

ORS 164.055 provides that a person commits first-degree theft when the person commits theft as defined in ORS 164.015, and the value of the property is $750 or more. To commit theft under ORS 164.015, a person must act "with the intent to deprive another of property," and must "take, appropriate, obtain or withhold" that property. The phrase "with intent" means that "a person acts with a conscious objective to cause the result or engage in the conduct so described." ORS 161.085(7). The question is how far down the

---

[3] Defendant did not testify at trial, but he elicited testimony from Meyrick, who testified that he had told defendant that Jansik owned the skid steer and trailer.

statute the mental state travels. *State v. Travalini*, 215 Or App 226, 234, 168 P3d 1159 (2007), *rev den*, 344 Or 110 (2008).

Several statutes inform our analysis. ORS 161.095(2) provides:

> "Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.105 provides, in part:

> "(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:
>
> "* * * * *
>
> "(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

In turn, ORS 161.115(1) provides, "[i]f a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state."

■ We have previously described the determination of "whether a culpable mental state attaches to certain elements of a crime" as a "chronically vexing problem." *State v. Schodrow*, 187 Or App 224, 228, 66 P3d 547 (2003). One dividing line between the cases is set out by ORS 161.105(1)(b): whether a statute is within the criminal code, or whether the statute defines an offense outside the criminal code. For statutes within the criminal code, the determination of the elements to which a culpable mental state attaches is governed by ORS 161.095(2) and ORS 161.115(1). For statutes defining offenses outside the criminal code, ORS 161.105(1)(b), by its terms, divides such statutes into two subcategories: those statutes that clearly indicate a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof, and those statutes that do not. If the statute does not

demonstrate a legislative intent to dispense with a culpable mental state—*i.e.*, it provides for one in the text of the statute—then the inquiry into which elements of the crime the culpable mental state attaches to is governed by ORS 161.095(2) and ORS 161.115(1) in the same manner as statutes within the criminal code. *See, e.g., Engen*, 164 Or App at 596-97 (applying statutes to statute defining offense outside the criminal code that prescribed a culpable mental state). If the statute defining an offense outside the criminal code does indicate a legislative intent to dispense with a culpable mental state, no mental state is required at all. *See Rutley*, 343 Or at 377-78 (rejecting defendant's argument that indictment supplied culpable mental state because indictment was ambiguous as to which element the mental state would attach).

With that background, it is apparent that, because it applies to statutes prescribing offenses outside the criminal code, ORS 161.105(1)(b) is not applicable here. ORS 164.055, of which defendant was convicted, is within the criminal code, and ORS 164.015 specifies the culpable mental state. An examination of the courts' decisions in *Rutley* reinforces that distinction. Because ORS 475.999 prescribed an offense outside the criminal code, both decisions looked to ORS 161.105(1)(b) and related statutes for legislative guidance in determining the elements to which a culpable mental state applied. *See Rutley*, 343 Or at 375 ("[W]ith regard to statutes like ORS 475.999 (1999), in which the statutory definition does not include an identified culpable mental state, the statutes we have identified * * * are pertinent to the determination[.]"). Where our decision in *Rutley* deviated from the Supreme Court's overriding analysis was in determining whether the text of ORS 475.999 clearly indicated a legislative intent to dispense with a culpable mental state. We held that the language of ORS 475.999 did *not* clearly indicate a legislative intent to dispense with a culpable mental state and, thus, we applied "the decisional rule * * * set out in ORS 161.095(2)" in reaching our decision. *Rutley*, 202 Or App at 642. The Supreme Court disagreed, concluding that the legislature *had* clearly indicated an intent to dispense with a culpable mental state as required under ORS 161.105(1)(b);

because the indictment—which had set out a "knowing" mental state—was ambiguous, the state was not obligated to prove that the defendant acted with a culpable mental state. *Rutley*, 343 Or at 377-78. Despite their opposing outcomes, both decisions shared a common methodology in undertaking to determine legislative intent through an examination of the text of the statutes, in context.

In this case, ORS 164.055 is part of the criminal code and contains a cross-reference to ORS 164.015. ORS 164.015 specifies the applicable culpable mental state for theft, that is, "intent to deprive." Therefore, unlike in *Rutley*, ORS 161.095(2) governs the determination whether a particular culpable mental state attaches to a particular element of the offense. The dispositive question therefore is whether the material element in ORS 164.055(1)(a) that the total value of the stolen property must be $750 or more necessarily requires a culpable mental state.

Again, defendant argued, and the trial court agreed, that the jury was required to find that he *knew* that the stolen equipment was worth more than $750. We note that we do not understand defendant to assert that a "knowing" *mens rea* applies to ORS 164.055 in its entirety, an argument that would fail because ORS 164.015 specifies a *mens rea* of with intent," not "knowingly" or "with knowledge." ORS 161.085(8). Rather, we understand defendant to assert that his knowledge of the trailer and skid steer's value was a necessary component of his forming an intent to deprive the owner of property; that is, if he did not know the value of the property, he could not have intended to deprive the owner of that quantum of value.

■ Defendant's argument nonetheless fails, because ORS 164.055 does not require a thief to know the value of stolen property. ORS 164.055 incorporates by reference the definition of theft in ORS 164.015. Reading the two statutes together, a person commits first-degree theft when, by other than extortion, the person, with intent to deprive another of property, takes, appropriates, obtains or withholds such property from an owner thereof and the total value of the property is $750 or more. ORS 161.115(1) provides that

where, as here, "an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state." Grammatically, the culpable mental state—"intent to deprive"—immediately precedes and directly modifies the prohibited acts of taking, appropriating, obtaining, or withholding property from an owner. Thus, the culpable mental state applies to the conduct that the statute prohibits. However, neither the grammatical structure nor the obvious legislative purpose of the statute suggests that the culpable mental state extends to elements beyond the prohibited act. If it were to extend further, a defendant could defeat a charge of first-degree theft by either willful ignorance of the value of the property stolen or by credibly testifying that he believed the value to be less than $750. It is unlikely that the legislature would provide for such defenses to first-degree theft merely by specifying that theft requires a culpable mental state of "with intent to deprive." *Cf. Rutley*, 343 Or at 376 (holding that "requiring a knowing mental state * * * would work against the obvious legislative purpose, in that it would create an incentive for drug dealers *not* to identify schools, and *not* to take into consideration their distance from them" (emphasis in original)).

Moreover, ORS 164.055 does not identify an offense distinct from theft as defined in ORS 164.015, but rather specifies the circumstances under which theft becomes theft "in the first degree." The commentary to the proposed criminal code states that, with respect to the provision that became ORS 164.055, "these sections retain the traditional standard of the value of the property stolen as the basis for distinguishing between a misdemeanor and a felony." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 125 (July 1971). Subsequent amendments to ORS 164.055 have expanded the circumstances constituting first-degree theft to include the context in which the property is taken. *See, e.g.*, ORS 164.055(1)(b) (providing that theft in the first-degree includes "theft * * * committed during a riot, fire, explosion, catastrophe or other emergency in an area affected [thereby]"). Interpreting ORS 164.055 to require the state to

prove that a defendant intended to steal property worth more than $750 would also require the state to prove the defendant's intent concerning those other circumstances. Again, it is unlikely that the legislature intended to require proof that a defendant intended to steal property during a "catastrophe," or that he intended to steal a "livestock animal" as defined by ORS 164.055(2)(d); likewise, it is unlikely that the legislature intended to permit a defendant to avoid conviction by claiming ignorance of the catastrophic conditions under which he stole a livestock animal. If the legislature had so intended, it could have easily done so by phrasing the *mens rea* requirement in ORS 164.055 differently. *Cf. Schodrow*, 187 Or App at 230-31 (holding that where legislature included a "knowingly" *mens rea* in an unlawful possession of a firearm statute, state was required to prove that defendant both knowingly possessed an object and knew the object was a firearm).

■ In sum, we conclude that the legislature did not intend to require the state to prove a defendant's intent to steal property worth at least $750 in order to convict him of first-degree theft. *See Rutley*, 343 Or at 377 (holding that purpose of the statute, its grammatical structure and the nature of the element, all militated against requiring a mental state be proved to support a conviction). The question remains whether, "viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime [of first-degree theft] beyond a reasonable doubt." *Shields*, 184 Or App at 509.

■ The state presented evidence that defendant, Meyrick, and Tellegen took the trailer and skid steer from Blue Flame Oil's parking lot. Love testified that he had not given them permission to do so and that the skid steer and trailer together were worth $16,500. Although Meyrick testified that he told defendant that the skid steer belonged to Jansik, Jansik testified that one of the men had offered to sell him a skid steer "like the one" they had with them. The men left after Jansik refused to buy the skid steer, and they abandoned it a quarter mile away. The skid steer had been washed, and its rear window and serial number were missing. The men also abandoned the trailer, and one of the tires, which Love testified had been flat, had been found inflated

when the trailer was recovered the next day. Drawing all inferences in the light most favorable to the state, a rational trier of fact could have found from those facts that the skid steer and trailer did not belong to Jansik and that defendant intended to deprive their owner of that property. Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal on the first-degree theft count.

In his second assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the unauthorized use of a vehicle count, because the evidence was insufficient for the jury to find that he knew that the trailer was a "vehicle." ORS 164.135 provides, in part:

> "(1)   A person commits the crime of unauthorized use of a vehicle when:
>
> "(a)   The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner."

ORS 801.590 defines "vehicle" as "any device in, upon or by which any person or property is or may be transported *or drawn upon* a public highway and includes vehicles that are propelled or powered by any means." (Emphasis added.) ORS 164.135 does not specify a culpable mental state; however, defendant was indicted for "unlawfully and knowingly" taking a vehicle. Thus, the state was required to prove that defendant knowingly took the trailer in order to convict him of unauthorized use a vehicle. *See State v. Bell*, 220 Or App 266, 269, 185 P3d 541 (2008) (so holding); *see also State v. Lane*, 341 Or 433, 440, 144 P3d 927 (2006) ("Having alleged that defendant acted knowingly, the state was required to prove defendant's knowledge.").

Defendant concedes that the trailer was a vehicle within the meaning of ORS 801.590 and ORS 164.135. However, he asserts that the statutory definition of "vehicle" is broader than the ordinary meaning of the term and that there is no evidence that he knew the trailer was a vehicle in the broader statutory sense when he and Meyrick hitched it to Tellegen's truck and took it to Jansik's property. The short

answer to defendant's argument is that no such evidence was required.

■ The Supreme Court's holding in *Lane* is instructive. In that case, the defendant was convicted of second-degree escape, ORS 162.155(1)(c), after he fled the courtroom when the trial judge "reduced him to custody." 341 Or at 436. The defendant appealed his conviction, arguing that the state had failed to prove that he knew the courtroom was a "correctional facility" under ORS 162.155(1)(c). The Supreme Court disagreed. *Lane*, 341 Or 433. As pertinent here, the court concluded that "[t]he state was not required to prove that defendant understood the statutory definitions contained in ORS 162.155(1)(c) or the specific differences between escape from 'custody' and escape from a 'correctional institution.'" *Id.* at 441. Thus, under *Lane*, where a defendant is alleged to have acted knowingly, the state need not prove that he or she acted with an understanding of statutory definitions contained in the offense, or that he had knowledge of the specific differences between statutory terms.

■ In this case, the state presented evidence that defendant, along with two other men, hitched up a trailer belonging to Love, towed it to a rural area, and abandoned it after unsuccessfully attempting to sell the skid steer the trailer carried. That evidence was sufficient to allow the jury to conclude that defendant knew he was engaged in the unauthorized use of a vehicle. *Cf. Lane*, 341 Or at 441 (summarizing evidence and holding that it "was sufficient to prove that the defendant knew that he was escaping from a location that was deemed to be a correctional facility"). The trial court correctly denied defendant's motion for judgment of acquittal.[4]

Affirmed.

---

[4] Defendant argues in his third assignment of error that his conviction for unauthorized use of a vehicle ought to be reversed because the jury's vote for conviction was not unanimous. Defendant challenges the validity of the 1934 amendment to Article I, section 11, of the Oregon Constitution allowing for nonunanimous jury verdicts, arguing that the amendment violated the bar on multiple amendments in Article XVII, section 1, as interpreted by the Supreme Court's decision in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998). We reject that argument without discussion. *See State v. Osbourne*, 153 Or 484, 486, 57 P2d 1083 (1936) (upholding 1934 amendment against Article XVII, section 1, challenge).