Argued and submitted December 19, 2018, reversed and remanded May 6, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LEE ROY STOWELL,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR40152; A165177

466 P3d 1009

Defendant was convicted of first-degree burglary, ORS 164.225, unauthorized use of a vehicle, ORS 164.135, and first-degree theft, ORS 164.055. In this appeal, defendant asserts that the trial court plainly erred in failing to instruct the jury that its members needed to concur on whether defendant acted as a principal or as an aider and abettor to the charged offenses. The state did not contest that failure to provide the jury concurrence instruction constituted plain error but argues that the error was harmless. Defendant further assigns error to the trial court's refusal to provide jury instruction that the state was required to prove that defendant was negligently unaware that the value of stolen property exceeded $1,000 as an element of the first-degree theft charge. *Held*: The trial court plainly erred in failing to give a jury concurrence instruction on aiding-and-abetting liability, that error was not harmless, and The Court of Appeals exercised its discretion to correct the error. The trial court did not err in refusing to give defendant's proposed jury instruction on the state's burden of proof regarding *mens rea*.

Reversed and remanded.

Bronson D. James, Judge.

Erica Herb, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

Defendant, who was convicted after jury trial of first-degree burglary, ORS 164.225, unauthorized use of a vehicle, ORS 164.135, and first-degree theft, ORS 164.055, argues on appeal that the trial court erred in two respects in instructing the jury. Defendant asserts that the trial court plainly erred in failing to instruct the jury that it needed to concur as to whether he was liable as a principal or as an aider and abettor on all three counts. We agree with defendant that this was plain error and, as explained below, exercise discretion to correct the error. We therefore reverse and remand. With regard to defendant's remaining argument—that the trial court erred in failing to give his requested jury instruction on first-degree theft and that the state was required to prove that defendant was "negligently unaware" that the value of the stolen property exceeded $1,000—we address it for the reason that it is likely to arise on remand, and conclude that the trial court did not err in declining to give defendant's proposed instruction.

We summarize the evidence in light of both parties' theories of the case, and review for legal error. This case concerns a home-invasion burglary. The facts are straightforward. The victims returned to their home and discovered numerous items missing from inside the home, including passports, blank checks, tax documents, electronics, women's apparel, and the key to a truck belonging to one of the victims. The truck itself that had been parked outside also was missing. Police investigated and determined that the entry point was a kitchen window that had been forced open after its screen had been cut. A criminalist was able to lift a fingerprint from the window that he later determined belonged to defendant.

Three days after the burglary, an officer executing a search warrant related to another matter discovered in a car belonging to Brandy Littlepage passports and blank checks stolen from the victims. The officer who searched Littlepage's car also found other items that he believed to be stolen, as well as cutting tools. The stolen truck was recovered, parked and locked, with the ignition intact, approximately a week after the burglary. Items in the truck

included women's clothing that did not belong to the victims, and the seat of the truck had been adjusted to fit a short person.

Defendant was questioned several weeks after the burglary. When defendant was shown some of the items found in Littlepage's car, he denied knowledge of them. When asked if he knew Brandy Littlepage, defendant paused briefly, then said "Amanda." When shown a picture of Littlepage, he indicated that he knew her as Amanda, that he had met her when he began using methamphetamine about a month earlier, and that he had purchased methamphetamine from her.

Defendant was charged with first-degree burglary in an indictment that alleged that he unlawfully and knowingly entered and remained in the victims' residence with the intent to commit the crimes of theft and unlawful use of a vehicle. The indictment also alleged unlawful use of the stolen truck, and that defendant had knowingly committed theft of personal property valued at $1,000 or more.

In its opening argument, the state asserted that, because defendant's fingerprint was found on the victims' window, and because a woman who was connected to him ended up with some of the items stolen from the victims, the jury should infer that defendant committed those offenses. Defense counsel countered, in opening, that multiple inferences could be drawn from the evidence that the state would present, leaving room for reasonable doubt that defendant had committed the offenses. Neither party specifically argued in opening about defendant's potential liability as an aider and abettor.

After the evidence described above was adduced by the state, the prosecutor presented in closing argument a theory that defendant had cut the screen, forced open the window, entered the victims' home himself in order to steal their belongings, and drove away in the truck. The prosecutor also argued, in the alternative, that the jury could convict on an aid-and-abet theory by finding that defendant opened the window with the intent to facilitate theft, and Littlepage entered the home and took the items. In response, defense counsel acknowledged that defendant's fingerprint

was on the window but argued that the state had presented no evidence that he had entered the house. Counsel noted that women's clothing had been taken from the home and more women's clothing had been found in the truck, and that Littlepage's vehicle contained not only items stolen during the burglary, but also cutting tools. Counsel argued that the state's evidence of defendant's fingerprint on the window was insufficient to support an inference that he was assisting Littlepage or anyone else to enter the home with intent to steal, and that no evidence connected him to the stolen truck. Counsel observed that the theft of the truck derived from the burglary of the home, because the keys for the truck had been inside the home. She argued that the evidence connected Littlepage to the crimes but was not sufficient to establish that defendant had assisted Littlepage with intent to facilitate the crimes. She argued that the fact that he touched the window established at most that he had trespassed on the property. She suggested that the viable inference to draw from the state's evidence was that defendant unwittingly became involved with and opened the window for Littlepage, not knowing that Littlepage was a professional thief. The jury was given standard instructions on aid-and-abet liability but was not given an instruction that it needed to concur on whether defendant was liable as a principal or as an aider and abettor. The jury returned a verdict of guilty on all three counts. The verdicts did not indicate whether the jury convicted defendant on an aid-and-abet theory of liability.

We first turn to the question whether the trial court plainly erred in failing to instruct the jury that its members needed to concur on whether defendant acted as a principal or as an aider and abettor to the charged offenses. In *State v. Phillips*, 354 Or 598, 606, 317 P3d 236 (2013), the court addressed the question whether the jurors needed to concur as to whether the defendant committed third-degree assault as a principal or as an aider and abettor. The court noted that, "[w]hen a statute specifies alternative means of committing a crime, the initial question is what, as a matter of legislative intent, are the elements of the crime that the state must prove." *Id.* at 604 (citing *State v. Pipkin*, 354 Or 513, 521-22, 316 P3d 255 (2013)). The court explained that

> "the elements necessary to prove liability as an aider and abettor ordinarily will not be coextensive with the elements necessary to prove liability as a principal. It follows that 10 jurors usually will have to agree on the elements necessary to prove that a defendant is liable for aiding and abetting another person's commission of a crime. Put differently, if the state seeks to hold a defendant liable either as the principal or as an aider and abettor and if a party requests an appropriate instruction, the trial court should instruct the jury that at least 10 jurors must agree on each legislatively defined element necessary to find the defendant liable under one theory or the other."

*Id*. at 606 (citation and footnote omitted).[1]

The court then turned to whether the error in failing to give a jury concurrence instruction in that case was harmless. In *Phillips*, the defendant was convicted of third-degree assault, and there was evidence that the defendant either hit the victim himself or hit the victim's brother to keep him from aiding the victim. Although the state presented both direct and aid-and-abet liability theories, the court noted that, under its case law concerning third-degree assault, a defendant can "cause" a victim's injury not only by directly inflicting it, but also when the defendant's conduct was "'so extensively intertwined with [another person's] infliction of the [victim's] injury' that defendant's conduct 'caused' the injury." *Id*. at 606-07 (quoting *State v. Pine*, 336 Or 194, 206, 82 P3d 130 (2003) (brackets in *Phillips*)). The court noted that "the jury could find that, by hitting the brother to keep him from coming to the victim's aid, defendant 'caused' the victim's injury, as this court defined that term in *Pine*." *Id*. at 607-08. Thus, the court concluded, either version of the facts presented to the jury would have established direct liability rather than aid-and-abet liability. And, although the jury had been instructed on aiding and abetting and could have found the defendant guilty on that theory, "when the only act that could have constituted

---

[1] *Phillips* referred to the need for 10 of 12 jurors to concur. In *Ramos v. Louisiana*, ___ US ___, ___ S Ct ___, ___ L Ed 2d ___, 2020 WL 1906545 (Apr 20, 2020), the United States Supreme Court held that juries must be unanimous. Although *Phillips*'s references to only 10 jurors needing to concur is no longer good law in light of *Ramos*, its conclusion that jury concurrence is required on this issue remains sound.

aiding and abetting the infliction of physical injury * * * also constituted 'causing' that injury * * *, we fail to see how any error in requiring jury concurrence on one theory or the other prejudiced defendant." *Id.* at 608.

The failure to give a jury-concurrence instruction on aiding-and-abetting liability can constitute plain error, *State v. Miranda*, 290 Or App 741, 754, 417 P3d 480 (2018), and the state acknowledges that the trial court's failure to instruct on this matter constituted plain error. We agree. The state further argues, however, that we should not exercise our discretion to correct the error because it was harmless under the circumstances presented here, citing *Phillips* for the proposition that the error was harmless. The state asserts that, because it is unlikely that any juror convicted without finding that defendant opened the window, although some jurors may have concluded that he entered the house and personally committed the theft crimes while others concluded he aided and abetted another in committing those crimes, the jurors all necessarily found that defendant had the requisite intent and any jurors "who found him guilty as a principal necessarily found facts sufficient to convict him as an accomplice." We disagree. The state's two theories of the case as presented to the jury were that (a) defendant acted alone in breaking into the victims' residence and stealing items, or (b) defendant assisted Littlepage by opening the window to allow Littlepage to enter the victims' residence to steal the items. Jurors who found defendant guilty as a principal would not necessarily have found facts to convict him as an aider and abettor, because the state's theory of direct liability did not involve any accomplice.[2] Nor is the obverse true: That is, if jurors believed that Littlepage alone entered the residence and stole the items, those jurors would not have found facts sufficient to convict defendant on a direct liability theory while finding that defendant opened the window with the intent to facilitate Littlepage's thefts.

---

[2] We note, in particular, that there was no direct evidence at all in this case that Littlepage had actually been on the victims' property. Defendant's argument that Littlepage committed the crimes, and the state's response that if she did so it was with defendant's help, were based solely on evidence that Littlepage was eventually found in possession of some of the stolen items, and the inference that a woman might have been in the stolen vehicle at some point.

Where evidence is presented of different acts by a defendant that could have constituted the charged offenses, jury concurrence is required in order to avoid an impermissible "mix and match" verdict where some jurors would find a defendant guilty based on one act and other jurors would find a defendant guilty based on another. *See State v. Ashkins*, 357 Or 642, 658-59, 357 P3d 490 (2015) (so noting); *Mellerio v. Nooth*, 279 Or App 419, 436, 379 P3d 560 (2016), *rev den*, 361 Or 803 (2017) (same).

       Thus, we reject the state's argument that we should not exercise discretion to correct the error on the ground that it is harmless. *See State v. Gaines*, 275 Or App 736, 747-49, 365 P3d 1103 (2015) (rejecting plain-error harmlessness argument involving direct or accomplice liability for robbery). Based on the considerations set forth in *Miranda*, 290 Or App at 755 (lack of harmlessness, gravity of the error, and little chance that counsel made a strategic choice in failing to request instruction), we exercise discretion to correct the error.

       We turn to defendant's remaining assignment of error, because it is likely to arise on remand. Defendant contends that the trial court erred in failing to give his requested instruction concerning *mens rea* on the theft charge. Defendant requested the following instruction:

    "(1)  For theft in the first degree, in order to find the defendant guilty, you must find he was negligently unaware that the value of the property stolen was valued at $1,000 or more.

    "(2)  To find that he was negligently unaware that the value of the property stolen was more than $1,000, you must find he failed to be aware of a substantial and unjustifiable risk that the property stolen was valued at $1,000 or more. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

    "(3) If the state has proven that the defendant intended, knew or was reckless as to the property being valued at $1,000 or more, then the state has also satisfied the requirement of proving the defendant was negligent."

The trial court declined to give the instruction, concluding that it did not comport with our decision in *State v. Jones*, 223 Or App 611, 196 P3d 97 (2008), *rev den,* 345 Or 618 (2009).

On appeal, defendant acknowledges that we held in *Jones* that the state was not required "to prove a defendant's intent to steal property worth at least [$1,000[3]] in order to convict him of first-degree theft." *Id.* at 621. He contends, however, that *Jones* addressed only whether the mental state of "intentional" must be proven with respect to that element and did not foreclose the possibility that the state was required to prove the lesser mental state of criminal negligence with respect to the value of the stolen goods.[4] In support of his argument, defendant cites *State v. Simonov*, 358 Or 531, 368 P3d 11 (2016), asserting that it stands for the broad proposition that, if a statute does not prescribe a culpable mental state for a given element of a crime, culpability "is established only if a person acts intentionally, knowingly, recklessly, or with criminal negligence." *Id.* at 538 (quoting ORS 161.115(2)).

As explained below, defendant is incorrect that *Jones* does not foreclose his argument and is incorrect that *Simonov* undermines our analysis in *Jones*. In *Jones*, the defendant, who had been convicted of first-degree theft, argued that the state had failed to adduce sufficient evidence that he knew the value of the items stolen. The state responded that it was not required to prove a culpable mental state with respect to the value of the property. 223 Or App at 616. In concluding that the state was correct, we first noted that ORS 164.015 incorporates the definition of theft found in ORS 164.015, and that ORS 164.015 provides that, in order to commit theft, a person must act "'with the *intent* to deprive another of property.'" 223 Or App at 616 (quoting ORS 164.015; emphasis added). We further noted that ORS 161.115(1) provides that, "[i]f a statute defining an offense prescribes a culpable mental state but does not specify the

---

[3] At the time that *Jones* was decided, first-degree theft required proof that the property stolen was worth at least $750. ORS 164.055 (2007).

[4] Defendant does not argue that *Jones* was incorrect in its conclusion that the "intentional" mental state did not apply to the element of the offense concerning the value of the stolen goods.

element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state." 223 Or App at 617. Thus, because ORS 164.055 prescribed a culpable mental state of "intentional," the state was required under ORS 161.115(1) to prove *that* mental state as to "each material element of the offense that necessarily requires a culpable mental state." 223 Or App at 618-19 ("ORS 164.055, of which defendant was convicted, is within the criminal code, and ORS 164.015 specifies the culpable mental state. * * * ORS 164.015 specifies the applicable culpable mental state for theft, that is, 'intent to deprive.'").

To the extent that defendant is suggesting in the present case that *Jones* did not foreclose the possibility that a lesser mental state than "intentional" might apply to the element of first-degree theft concerning the value of the property, we disagree. In *Jones*, we stated that "we do not understand defendant to assert that a 'knowing' *mens rea* applies to ORS 164.055 in its entirety, an argument that would fail because ORS 164.015 specifies a *mens rea* of 'with intent,' not 'knowingly' or 'with knowledge.' ORS 161.085(8)." 223 Or App at 619. Implicit in that statement was the conclusion that, because the theft statute specified an intentional mental state, lesser mental states, which include not only "knowingly" but "recklessly" and "criminally negligent," do not apply. *See* ORS 161.085(8), (9), (10). We then turned to the question whether the value of the stolen property was an element that "necessarily" required a culpable mental state, a chronically vexing issue given the ambiguity of the phrase "necessarily requires a culpable mental state." 223 Or App at 619-21.[5] We concluded that it was not such an element. *Id.*

*Simonov* did not undermine our conclusions in *Jones*. In *Simonov*, the court considered whether unauthorized

---

[5] The phrase "necessarily requires a culpable mental state," appears not only in ORS 161.0015, which was at issue in *Jones*, but in ORS 161.095 ("Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."). As the Oregon Supreme Court has noted, this phrase "introduces a confusing appearance of circularity in the text." *State v. Blanton*, 284 Or 591, 594, 588 P2d 28 (1978). *See also State v. Rainoldi*, 351 Or 486, 490, 268 P3d 568 (2011) (describing text as "somewhat circular").

use of a vehicle, ORS 164.135(1)(a), which involves use of a vehicle without the owner's consent, required proof that the defendant had a culpable mental state with respect to the owner's lack of consent. The defendant contended that the mental state of "knowingly" was required as to that element, and that the trial court had erred in instructing the jury that the state was required to prove only that he acted with criminal negligence. ORS 164.135 does not prescribe any mental state for the crime of unauthorized use of a vehicle. The state argued that, because the statute did not prescribe a mental state, it was required under ORS 161.115(2) to prove only that the defendant acted "intentionally, knowingly, recklessly or with criminal negligence." *Simonov*, 358 Or at 535-36. By way of introduction, the court observed:

> "If a statute defining an offense in the Criminal Code includes a single mental state 'but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense.' ORS 161.115(1).
>
> "If, as with the UUV statute, ORS 164.135(1)(a), the statute does not prescribe a culpable mental state for all or some of the material elements of the offense, 'culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence.' ORS 161.115(2). Those four enumerated states do not freely apply to any element; rather, they each apply only to particular types of elements."

358 Or at 538-39 (citing *State v. Crosby*, 342 Or 419, 428-29, 154 P3d 97 (2007)). The court reiterated: "To identify which mental state applies when a statute *does not prescribe a culpable mental state for material elements of the offense*, it is necessary to determine the type or types of those elements." *Id.* at 539 (emphasis added).

To be sure, in its broad-ranging discussion of what types of elements require proof of which mental states, and in particular drawing distinctions between "conduct" and "circumstance" elements, the court in *Simonov* did not confine itself to crimes such as unauthorized use of a vehicle that are within the Criminal Code and prescribe no mental state and thus are analyzed under ORS 161.115(2). In fact, the court cited approvingly our decision in *Jones* for

the proposition that the value of stolen property is not a "conduct" element of the crime. *Simonov*, 358 Or at 542 (citing *Jones*, 223 Or App at 621). *See also id*. at 542-43, 543 n 4 (discussing *State v. Rainoldi*, 351 Or 486, 268 P3d 568 (2011), and *State v. Rutley*, 343 Or 368, 171 P3d 361 (2007), which concerned statutes outside the Criminal Code and therefore were governed not by either ORS 161.115(1) or (2) but, rather, by ORS 161.105). The court concluded that,

> "when an element of an offense within the Criminal Code describes the nature, that is, the essential character, of a proscribed act or omission, it generally is a conduct element, and (*unless different mental states are specified in the statute defining the offense*), the minimum culpable mental state is knowledge. In contrast, when an element of a Criminal Code offense describes an accessory fact that accompanies the defendant's conduct, it is a circumstance element for which (*again, unless different mental states are specified*), the minimum culpable mental state is criminal negligence."

*Id*. at 546 (emphases added). Thus, the court was describing the analysis for crimes within the Criminal Code that do not specify mental states and, thus, are governed by ORS 161.115(2). The emphasized language above makes it entirely clear that the analysis set forth pertained to ORS 161.115(2), governing crimes that do not specify mental statutes, and not ORS 161.115(1), which concerns crimes that do specify a mental state.

　　　　Defendant's proposed analysis in the present case conflates the requirements of ORS 161.115(1) and (2). He argues that, because ORS 164.055 and ORS 164.015 do not "explicitly provide for a culpable mental state *with regard to the value of the property that is the subject of a theft*," the state is required to prove at least criminal negligence with respect to that element. (Emphasis added.) Defendant appears to accept—or at least does not dispute—that the theft statutes prescribe "intentional" conduct ("intent to deprive"). He seems to assume, however, that everything other than the "intent to deprive" element is governed by the *Simonov* analysis concerning ORS 161.115(2). That is incorrect. We reiterate the text of ORS 161.115(1): "If a statute defining an offense prescribes a culpable mental

state but does not specify the element to which it applies, *the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state*." Unlike ORS 161.115(2), ORS 161.115(1) does not permit, much less require, an analysis as to whether some aspects of the crime may be proved by a lesser mental state than that required by the applicable statute within the Criminal Code. Under ORS 161.115(1), the analysis is more straightforward: If a material element is one that "necessarily requires a culpable mental state," then the mental state is the one set forth in the statute.

The mental state prescribed in ORS 164.055 and ORS 164.015 is "intentional." In *Jones*, we concluded that the value of the property stolen was not an element that "necessarily requires a culpable mental state." ORS 161.115(1). Given the strictures of ORS 161.115(1), our conclusion in *Jones* did not leave open the possibility that a mental state of less than "intentional" might be required as to value of the stolen property. The trial court therefore did not err in refusing to give defendant's proposed "negligently unaware" jury instruction for first-degree theft.

In sum, the trial court did not err in refusing to give defendant's proposed jury instruction on *mens rea*. It did, however, plainly err in failing to give a jury concurrence instruction with respect to aid-and-abet liability, and we exercise our discretion to correct that error.

Reversed and remanded.