Argued and submitted December 12, affirmed September 8, 1981

STATE OF OREGON,
*Respondent,*
*v.*
ROBERT TERRY WHITE,
aka Eric Vaughn,
*Appellant.*

(No. C 78-07-12150, CA 16959)

STATE OF OREGON,
*Respondent,*
*v.*
ROBERT TERRY WHITE,
aka Eric Vaughn,
*Appellant.*

(No. C 78-07-12152, CA 16960)
(cases consolidated)
632 P2d 1363

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his five convictions for theft in the first degree. He was charged in one indictment with seven counts of theft of items of electronic equipment. Pursuant to defendant's motion to have the seven counts severed, he was tried and convicted separately on four counts. The trial court sentenced him to five years imprisonment on each of the convictions, the terms to run concurrently. Defendant was charged in a separate indictment with theft of currency and was convicted. He was sentenced to five years on that conviction, the sentence to run consecutively to the others.

On October 8, 1979, defendant and his then attorney appeared before the trial court for argument on a motion. At that time, the attorney suggested the need to set a trial date. He advised the court that he was involved in trial of a case in federal court beginning October 15, that he expected the federal court trial to take two months and that, if defendant's case could not be tried before October 15, it would be necessary to appoint substitute counsel for defendant. He told the court that he would advise defendant to get another attorney rather than continue the case for two months. Defendant told the court that he opposed the continuance and indicated that he did not wish to change attorneys. The matter was left unsettled to allow the state to determine whether it could gather its witnesses so that a one and one-half day trial could take place prior to October 15, 1979. On October 9, 1979, defendant's attorney submitted a motion for substitution of counsel. A new attorney was appointed on October 12, 1979. On October 22, 1979, defendant's motion for separate trials on each count in the seven-count indictment was allowed.

Defendant's first trial involved theft from Moore's Audio-Visual (Moore's). Kenneth Kress, rental manager of Moore's, testified that he received several telephone calls in March, 1978, from a person who identified himself as Eric Vaughn, about rental of audio-visual equipment for three days. As a result of the calls, Moore's delivered a color camera, a tripod, an editing deck, a television set and some tapes to the defendant at the Regency Apartments on April 6, 1978. Defendant signed a three-day rental agreement.

When Moore's returned to the Regency Apartments to recover the equipment at the end of the three-day period, defendant and the equipment had vanished. The equipment was later recovered in Morocco. A police officer testified that the defendant admitted that he had received the items from Moore's with the intent to sell them in Morocco.

Two other witnesses testified concerning separate dealings with the defendant. One witness was a sales representative for Video-Sonics. He testified that in March, 1978, he met defendant, who said he was interested in purchasing television equipment and identified himself as Eric Vaughn. At about the same time as Moore's delivery in April, 1978, Video-Sonics also provided equipment to the defendant at the Regency Apartments. When the sales representative went to demonstrate the equipment, defendant and the equipment had disappeared. The other witness, the president of Top-Video, testified that he was called in March, 1978, by the defendant, who identified himself as Eric Vaughn. He testified that Top-Video rented television production equipment to defendant and delivered it to the Regency Apartments on April 6, 1978. The next day, while enroute to retrieve it, he learned that the equipment was gone.

In defendant's subsequent trial for theft from Top-Video, a police detective testified that defendant admitted receiving the equipment from Top-Video. Witnesses from Moore's Audio-Visual and Video-Sonics substantially reiterated the testimony given by them in defendant's earlier trial for theft from Moore's.

In defendant's subsequent trial for theft from Video-Sonics, the sales representative for Video-Sonics reiterated his testimony given in defendant's earlier trials. The police detective testified that the defendant had admitted fraudulently obtaining the equipment from Video-Sonics. There was also testimony from an employee of Rose City Sound.[1] The employee testified that he was contacted by defendant, who identified himself as Eric Vaughn, and that equipment was leased by Rose City Sound to defendant with an option to purchase by April 10,

---

[1] The charge of theft from Rose City Sound was dismissed, as were charges of theft from two other suppliers of equipment.

1978. Microphones and a tape recorder were delivered to defendant at the Regency Apartments, and defendant and the equipment disappeared prior to April 10, 1978.

In defendant's subsequent trial for theft from Communication Resources, a representative of that business testified that he was contacted in March, 1978, by the defendant, who identified himself as Eric Vaughn. In response to defendant's request either to rent or purchase equipment, answering devices, tapes and mobile telephones were delivered to defendant at the Regency Apartments between March 20, and April 3 or 4, 1978. The witness testified that when he returned to obtain payment for the equipment, defendant and the equipment had disappeared. The police detective testified that defendant had admitted receiving the equipment and absconding with it to Morocco. Two other witnesses testified that defendant had victimized their respective employers after contacting them in March, 1978, and identifying himself as Eric Vaughn. One, the representative of Rose City Sound, reiterated his testimony as previously described. The other, a representative of Delta Office Products testified that he had delivered a typewriter and a recorder to the Regency Apartments between March 23 and April 6, and that defendant had absconded with the equipment without paying for it.

Defendant was also convicted of theft of money from Jordan Schnitzer Properties, which owns the Regency Apartments, while defendant was employed by Harsh Investment Corporation as manager of the apartments.

■     Defendant raises four issues on appeal. He contends that the trial court was without jurisdiction to impose consecutive sentences, because there is no statutory authority in Oregon which provides for the imposition of consecutive sentences. Defendant asks us to overrule *State v. Jones,* 250 Or 59, 440 P2d 371 (1968). In *Jones* the Supreme Court held that:

> "It is an inherent power of the court to impose sentences, including the choice of concurrent or consecutive terms when the occasion demands it * * * . Accordingly, the legislature would have recognized that no legislation was needed to authorize the courts to exercise a power already in existence to impose either consecutive or concurrent sentences." 250 Or at 61.

The question of whether the issue was correctly decided by the Supreme Court is not one for our resolution.

■ Defendant also contends that "there was insufficient proof of theft from Schnitzer Properties (as alleged in the indictment) since defendant was employed by Harsh Corporation, and the victim if any, was Harsh Corporation." Defendant did not allege a "wrong victim" theory in his motion for a judgment of acquittal. That motion was based on his contention that there was insufficient evidence that defendant, rather than another individual, was responsible for the theft of the money. Since defendant failed to assert the claimed error in his motion to the trial court for judgment of acquittal, it will not be entertained on appeal. *State v. Applegate,* 39 Or App 17, 591 P2d 371, *rev den* 287 Or 301 (1979).

■ Defendant also contends that the circuit court erred when it failed to grant defendant's motion *in limine* to exclude testimony of other crimes or bad acts during the four trials for theft of equipment. The state offered the testimony as proof of defendant's *modus operandi.* According to *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975), *citing State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972), evidence showing "novel means" or *"modus operandi,"* and evidence of a "common scheme or plan" must satisfy the same requirements to be admissible. To be admissible the other crimes must be "nearly identical in method"; there must be "a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestation." More is demanded than the mere repeated commission of the same class of crime. *State v. Manrique, supra.* 271 Or at 208-210.

■ The evidence of other crimes in this case showed that the defendant had used the same fictitious name, had equipment delivered to the same place at about the same time, and had removed himself and the equipment to Morocco just prior to the time when the vendors or lessors arrived to recover their equipment or seek payment. The evidence in this case clearly satisfies the *Manrique* test and has more probative value than prejudicial effect. The trial court did not abuse its discretion in admitting the evidence.

because the identity of method and the concurrence of common features are apparent among all of the crimes.

■ Defendant finally contends that "the circuit court erred by allowing dismissal of the defendant's attorney, * * * without the concurrence or the presence of defendant." Defendant relies on *United States v. Laura,* 607 F2d 52 (3d Cir 1979). In *Laura* the court held that " * * * the arbitrary dismissal of a defendant's attorney of choice violates a defendant's right to counsel." 607 F2d at 56. The trial court had substituted attorneys, rather than having the matter heard by another judge when it became apparent that the defendant's attorney was representing parties in a state court proceeding in which the judge had an opposing interest. However, the court did point out that a defendant does not have an absolute right to particular counsel and that the trial judge has some discretion to affect the defendant's selection of counsel.

In the case at hand, the trial court did not abuse its discretion; there was no arbitrary choice made here. The trial court was confronted with either continuing the trial for two months, over the defendant's explicit objection, or replacing defendant's attorney, also over defendant's explicit objection. Defendant's attorney was not requesting his withdrawal without adequate reason. Considering the trial court's dilemma, there was no abuse of discretion, especially in light of the facts that defendant was incarcerated pending trial and was seeking a speedy trial.

ORS 135.050(4) provides:

> "The court having jurisdiction of the case may substitute one appointed counsel for another at any stage of the proceedings when the interests of justice require such substitution."

Defendant expressly requested that the matter not be continued. Affording defendant early trial, as requested, required substitution of counsel in the interests of justice.

Affirmed.