Argued and submitted September 26, 2008; resubmitted en banc April 7, affirmed July 1, petition for review allowed October 21, 2009 (347 Or 290)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERRY DEAN SCHOEN,
*Defendant-Appellant.*

Baker County Circuit Court
04494; A129669

211 P3d 948

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. On the brief were Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and John L. Susac, Deputy Public Defender.

Heather A. Vogelsong, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Schuman, Ortega, Rosenblum, and Sercombe, Judges, and Carson, Senior Judge.

PER CURIAM

Edmonds, J., concurring.

Haselton, J., concurring.

Sercombe, J., dissenting.

**EDMONDS, J.,** concurring.

Defendant appeals a judgment of conviction for third-degree criminal mischief, ORS 164.345(1), and argues that the trial court erred when it denied his motion for a judgment of acquittal on the charge. We affirm.

As a result of a domestic dispute, defendant was arrested and placed in the backseat of a patrol car. While inside the car, defendant kicked the car door and window but did not cause any damage. Defendant moved for a judgment of acquittal, asserting that the evidence was insufficient to demonstrate that he had violated the statute. The trial court denied defendant's motion, and defendant appeals.

ORS 164.345 provides, in part:

"(1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another."

Defendant agrees that the statute does not require a showing of actual damage to the victim's property; however, in his view, "the property must be affected somehow by the defendant's conduct before he is deemed to have tampered or interfered with it." The state responds that the issue as framed by defendant was not adequately preserved in the trial court and that review for plain error is not proper on the record before us. ORAP 5.45. Alternatively, the state argues that the evidence is sufficient to show that defendant tampered or interfered with the patrol car by kicking the door and the window of the car and trying to force it to open.

In order to preserve an issue for appeal, a party must provide the trial court with a specific explanation of the objection with enough clarity to ensure that the court can identify and consider any error that it has made and correct it immediately, if correction is warranted. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Paramount to determining whether an issue has been preserved for purposes of appeal in a lower tribunal is the need to properly frame the issue. The issue in this case, when properly framed, is whether the legislature

intended ORS 164.345 to apply to the circumstances where an arrested person is confined inside the backseat of a patrol car and forcefully kicks the door and window that function as part of the boundaries of his confinement.

Defendant argued to the trial court:

> "We would ask for a motion for judgment of acquittal on the criminal mischief, for damaging a—or kicking a car door and a window. There's been no showing there's any damage to the vehicle of any kind. So we don't believe there's enough there."

In substance, defendant told the trial court that the crime of third-degree criminal mischief does not occur under such circumstances without the existence of additional proof that the defendant caused "damage of any kind" to the car door and window.

In the abstract, a car door and window could be "damaged" in many different ways by a person's forceful kicks. For example, forcefully kicking a door and window could result in the window breaking, the window not retracting, the door lock not operating, the door handle not functioning, or the door being dented or scratched. When defendant argued to the trial court that "there's been no showing of any damage to the vehicle *of any kind*[,]" he was essentially asking the trial court to address the legal significance of the failure of the state to offer any evidence of the causal effect, if any, of the force that he directed at the door and window of the police car. (Emphasis added.) The trial court rejected defendant's motion without explanation, other than to state, "I think there's sufficient evidence for the jury to hear all five charges." Presumably, when the trial court ruled, it had the elements of ORS 164.345 in mind, including the requirement that the state show that defendant tampered or interfered with the patrol car with the intent to cause substantial inconvenience to the owner or another person.

On appeal, defendant argues, in part:

> "[T]he property must be affected somehow by the defendant's conduct before [the defendant] is deemed to have tampered or interfered with it. That is, the defendant's conduct must prevent the utilization of the property."

Later in defendant's brief, he explains more fully:

> "At that point, the sole purpose or 'value' of the backseat of that patrol car was to detain defendant. Although defendant kicked the windows and doors of the patrol car while he was in the backseat, he neither damaged the car nor did he prevent the utilization of the backseat—*i.e.*, his detention."

When the arguments made by defendant to the trial court are compared to the arguments made by him on appeal, we are persuaded that the issue framed in the trial court is the same issue that is before us. As is evident from the above examples, one form of damage to a car door and window is the impairment of its function or utilization, but defendant's argument to the trial court was not limited to that contention but rather to "damage of any kind."[1] We perceive no qualitative difference between defendant's "damage of any kind" argument made to the trial court and his argument on appeal that the car door and window "must be affected somehow" for purposes of alerting the trial court to the issue.

Judge Haselton's concurrence would hold to the contrary. We do not disagree with the general principles that his concurrence relies on—rather, we disagree with the conclusion that he reaches based on his application of those principles to the circumstances of this case. Defendant has narrowed his argument on appeal to include within his "damage of any kind" argument an argument that his actions did not result in any functional damage to the patrol car (*i.e.*, the patrol car's use as a means to detain a person). Accordingly, in our view, the issue before the trial court is the same as the issue before us. Because the policies underlying the rule of preservation are adequately served in this case, we turn to the issue of whether the evidence was sufficient for a reasonable trier of fact to infer that defendant tampered or interfered with the patrol car with intent to cause substantial inconvenience to the owner or to another person.

To assess the sufficiency of the evidence, we must initially determine what conduct the legislature intended

---

[1] The ordinary meaning of damage is "loss or injury to person or property * * *." *Black's Law Dictionary* 416 (8th ed 2004); *see also* ORS 31.710(2)(a) (" 'Economic damages' means objectively verifiable monetary losses including but not limited to * * * reasonable and necessarily incurred costs due to loss of use of property * * *.").

would violate the statute. To that end, we begin by examining the text and the context of the statute. Second, we consider the legislative history underlying the statute where the history appears useful for discerning the legislature's intent, even if there is no ambiguity in the statute's text. The third step in the analysis for interpreting the legislature's intention, if its intent remains unclear after examining the text, context, and the legislative history underlying the statute, is to resort to general maxims of statutory construction. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009).

To establish the elements of third-degree criminal mischief, the state must prove that a person (1) tampered or interfered with the property of another, (2) acted with the intent to cause substantial inconvenience to the owner or to another person, and (3) had neither a right to do so nor a reasonable ground to believe that he or she had such right. Whether the legislature intended ORS 164.345 to govern the conduct of defendant in this case depends on the interpretation of the words "tampers or interferes" in the statute. We are not aware of, and the parties do not cite, any statute that defines "tampers or interferes" for purposes of ORS 164.345. Consequently, we commence the analysis by applying the principle that words of common usage in a statute should be given their plain, natural, and ordinary meaning. The word "tamper" in the context of the statute could mean "2a: to interfere so as to weaken or change for the worse * * *." *Webster's Third New Int'l Dictionary* 2336 (unabridged ed 2002). Also, *Black's Law Dictionary* defines the word "tamper" as "**1.** To meddle so as to alter (a thing); esp., to make changes that are illegal, corrupting or perverting. **2.** to interfere improperly; to meddle." *Black's Law Dictionary* 1494 (8th ed 2004). In addition, according to *Webster's*, the word "interfere," among other meanings, can mean "**2**: to come in collision * * *." *Id*. at 1178. Similarly, *Black's* defines the word "interference" as "**1.** The act of meddling in another's affairs. **2.** An obstruction or hindrance." *Id*. at 831.

Also, the crime of third-degree criminal mischief must be construed in the context of the crimes of second-degree criminal mischief, ORS 164.354, and first-degree criminal mischief, ORS 164.365. A comparison of the elements of third-degree criminal mischief with the elements of

first- and second-degree criminal mischief further informs the intent of the legislature as to ORS 164.345. Second-degree criminal mischief incorporates by reference the elements of third-degree criminal mischief and adds the element of damage to property exceeding $100. A person commits the crime of first-degree criminal mischief when "with intent to damage property, and having no right to do so nor reasonable ground to believe that the person has such right[,]" the person damages or destroys property of another in "an amount exceeding $750" or commits another act enumerated by the statute. A comparison of the elements of third-degree criminal mischief with the elements of first- and second-degree criminal mischief suggests that the legislature did not intend that damage to the object tampered or interfered with constitute an element of third-degree criminal mischief.

The legislative history is particularly helpful in clarifying what a comparison of the elements of first-, second-, and third-degree criminal mischief suggests. ORS 164.345 has its genesis in the proposed 1971 Oregon Criminal Code. Section 145 of the proposed code became ORS 164.345, the statute at issue in this case; section 146 became ORS 164.354, second-degree criminal mischief; and section 147 became ORS 164.365, first-degree criminal mischief. The commentary to sections 145 to 147 states the following:

> "Section 145 is intended to cover the type of conduct that is not thievery, but, rather, amounts to unauthorized and unlawful interference with the property of another. *Damage to property is not an element of this crime.*

> "Section 146 defines three ways of committing the crime of criminal mischief in the second degree by damaging property of another. Note that under paragraph (b) intentionally damaging property in any amount is a violation but recklessly damaging requires the damage to exceed $100.

> "Section 147 is the same basic offense as that described in [section] 146, except that it is aggravated by the amount of the damage or because explosives were used. An intent to damage property is a necessary element of the offense.

"Taken as a whole, the proposed draft combines the features of 'criminal tampering or interference' with those of 'malicious mischief.' "

(Emphasis omitted; emphasis added.) Also, when the legislature codified sections 145 to 147, it repealed a number of statutes pertaining to malicious destruction or injury to property, including *former* ORS 164.900 (1971), *repealed by* Or Laws 1971, ch 743, § 432, which made it unlawful to maliciously destroy or injure personal property.

We think one understanding is clear from the legislative history. ORS 164.345 encompasses more than circumstances where the property of another is affected or damaged. Indeed, Donald L. Paillette, Project Director of the Criminal Law Revision Commission, explained that third-degree criminal mischief "would cover the type of conduct that * * * might not result in any damage to the utility or the property but was still interfering with the property in some manner." Minutes, Criminal Law Revision Commission, May 17, 1968, 7. As the legislative history provides, the statute is intended to cover both acts of criminal tampering or interference and acts of malicious injury to property. Paillette's remarks from the minutes reflect the effort to provide broad protection for every unwarranted interference with the property of another when he recommended the insertion of language in the draft that a person violates the statute if the person tampers or interferes with property of another with intent to cause substantial inconvenience to the owner or to another person without any resulting damage to the property itself. Among the examples considered by the commission were the following:

"[t]ampering with railroad ties or switches, tampering with a bicycle so the brakes wouldn't work, and removing cattle guards so the cattle were turned loose. Chairman Burns recalled an incident where someone removed the locks from the snow gates on Lark Mountain and some young people had subsequently entered the area, became snowbound, and one of them had died as a result."

Minutes, Criminal Law Revision Commission, May 17, 1968, 8.

Later, that understanding was reinforced by the subcommittee's decision to enact a crime of third-degree criminal mischief aimed at circumstances where "a person tampered with property and caused inconvenience but no damage[.]" Minutes, Criminal Law Revision Commission, May 27, 1968, 5-6. Based on the legislative history and the language of the statutes themselves, it appears that defendant's argument "that the property must be affected somehow by the defendant's conduct before [the offender] is deemed to have tampered or interfered with it" for purposes of third-degree criminal mischief is incorrect.

The dissent disagrees. In its view, because there was no evidence in this case that kicking the rear door and window of the police cruiser affected the vehicle's condition or usefulness, defendant's motion for a judgment of acquittal should have been granted. 229 Or App at 443 (Sercombe, J., dissenting). In other words, the dissent views ORS 164.345 as limited to criminalizing only those circumstances where there is actual injury to the object or where its use is interfered with.

With respect, the dissent reads qualifying words into the commentary for purposes of ORS 164.345 that do not exist. The dissent would require a physical effect on the property or an interference with the utility of the property before the statute is deemed to be violated. But that position is at odds with the ordinary connotation of the statement in the commentary, "Damage to property is not an element of this crime." That statement constitutes an absolute and plenary declaration that any form of damage to property, including the loss of use of property, is not intended by the legislature to constitute as an element of the crime, and the statement evidences the acceptance by the subcommittee of Paillette's proposal that the statute provides for protection from all unwarranted interferences with the property of another. Moreover, the examples considered by the subcommittee demonstrate that the legislature intended to make unwarranted interferences with property with the intent to cause substantial inconvenience to the owner or other persons unlawful under ORS 164.345.

Defendant's argument suffers from a similar infirmity. He, also, would add qualifications to the statute not provided by the language of the statute. Defendant would read into the statute a requirement that, as applied to the circumstances of this case, his actions physically affected the car door and window or, alternatively, that his actions prevented the police from using the car door or window in some respect. But that reading would require that the owner of the property suffer some ascertainable loss of use of the property or that the property itself be injured physically, an argument that is at odds with not only the absence of any requirement to prove damage but also with the examples considered by the subcommittee.[2]

Admittedly, the legislative history does not expressly answer the question for us, but it does provide some guidance. The commentary and legislative history informs us about the intended breadth of the scope of the statute—*e.g.*, that ORS 164.345 is "intended to cover the types of conduct that is not thievery, but rather amounts to unauthorized and unlawful interference with the property of another." Also, as we have observed above, one of the ordinary definitions of the word "interference" is the word "collision." Thus, an unlawful collision or contact with another's property is within the purview of the meaning of the word "interference" in the statute. In addition, the legislature's emphasis on the scienter or intent element of the statute—"to cause substantial inconvenience to the owner or another person"—informs the issue. Finally, contrary to the dissent's assertion, it is not just the intent to cause any inconvenience that violates the statute; rather, the intent must be to cause a *substantial* inconvenience.[3] It is evident from a comparison

[2] For example, the malicious changing of a railroad switch could cause a train to derail, fulfilling the damage element of criminal mischief in the first degree. On the other hand, the malicious changing of a railroad switch so that a line of boxcars enters a siding would cause no damage but only substantial inconvenience to the railroad. In the latter circumstance, there would be no damage to or impairment of the use of the railroad's property. Rather, the switch would merely have to be returned to its proper setting. Thus, the assertion that there must be some "effect" on the property itself in addition to the intent to cause substantial inconvenience to the owner of the property is inconsistent with the examples considered by the subcommittee for purposes of criminal mischief in the third degree.

[3] For example, if a person repeatedly rings the doorbell of a residence with the intent to cause inconvenience to the occupant to come to the door and answer the

of the different degrees of criminal mischief that the legislature intended the scienter element in the statute to function in lieu of the requirement of damage to the property of another and that, additionally, the element serves to distinguish criminal tampering or interfering with the property of another from noncriminal, incidental tampering or interference with the property of another.

In light of the above considerations, we conclude that the legislature contemplated that defendant's actions were subject to ORS 164.345(1). A reasonable factfinder could find that defendant's acts constituted an "interference" within the ordinary meaning of the statute because his foot repeatedly and forcefully collided with the property of another and that he intended to cause the owner or another person inconvenience when he had no right to do so nor any reasonable ground to believe he had such a right.

Affirmed.

Ortega and Rosenblum, JJ., and Carson, S. J., join in this concurrence.

**HASELTON, J.,** concurring.

Defendant's contention on appeal regarding the insufficiency of the state's proof of third-degree criminal mischief, ORS 164.345(1), was not raised and preserved for our review. Accordingly, I concur that defendant's conviction for that crime must be affirmed.

Before the trial court, defendant's entire argument in support of the motion for judgment of acquittal (MJOA) on the criminal mischief charge was as follows:

> "We would ask for a motion for judgment of acquittal on the criminal mischief, for damaging a—or kicking a car door and a window. There's been no showing [that] there's any damage to the vehicle of any kind. So we don't believe there's enough there."

ring, the person interferes with the property of another (the doorbell) with the intent to cause substantial inconvenience to another person and without any right or reasonable ground to believe that the offender has such a right. Given the breadth of protection against unwarranted interferences with the property of another intended by the legislature, the conduct would also constitute a violation of ORS 164.345(1).

When the prosecutor asked whether there was any need to respond to defendant's MJOA with respect to any of the five pending charges, the trial court replied, simply, "No, I think that there's sufficient evidence for the jury to hear all five charges." Thus, the only challenge that defendant raised in the trial court was that the state had failed to prove "any *damage* to the vehicle of any kind." (Emphasis added.)

On appeal, defendant no longer contends that the state was required to prove "damage" to the patrol car but failed to do so. Indeed, defendant explicitly acknowledges that, "[w]hile Oregon courts have never addressed what constitutes tampering or interfering with the property of another, the legislative history of the statute indicates that *actual damage to the property is not required.*" (Emphasis added.) Instead, defendant now asserts, for the first time:

> "[T]he plain language and legislative history of the statute suggests that the property must be affected somehow by the defendant's conduct before he is deemed to have tampered or interfered with it. That is, the defendant's conduct must prevent the utilization of the property."

Defendant never raised that contention—*viz.*, "Yes, damage to the property isn't required, but impairment of the property's function is required"—before the trial court.

We and the Oregon Supreme Court have consistently reiterated the requisites of preservation. Most recently, in *O'Hara v. Board of Parole*, 346 Or 41, 47, 203 P3d 213 (2009), the Supreme Court emphasized that

> "[r]ules of preservation in court proceedings serve several purposes, including encouraging the parties to sharpen the issues and to present them fully and fairly to the trial court in the first instance, so that the trial court has an opportunity to make an informed ruling and develop an adequate record and the opposing party and the reviewing court are not taken by surprise later."

The Supreme Court in *O'Hara*, 346 Or at 47, repeated with approval its admonition in *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008), that "[p]reservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an

appeal." *See also State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.").

Further, in the specific context of reviewing denials of motions for judgment of acquittal, we have consistently held that we will not consider a challenge to the sufficiency of the state's proof that was not raised before the trial court. *See, e.g., State v. Jackson*, 212 Or App 51, 55, 157 P3d 239, *rev den*, 343 Or 206 (2007) (the defendant's contention on appeal regarding alleged insufficiency of state's proof of coperpetrator's "subjective purpose" held to be unpreserved where the defendant's only argument before the trial court had been the "qualitatively different" contention that, "as a matter of law, the enhancement of third-degree robbery to second-degree robbery under ORS 164.405(1)(b) is not triggered when the coperpetrator's participation (regardless of his or her 'purpose') is limited to facilitating the principal robber's escape"); *State v. Shields*, 184 Or App 505, 509 n 1, 511 n 2, 56 P3d 937 (2002), *rev den*, 335 Or 355 (2003) (where the defendant's MJOA raised only the argument that "the state had not presented evidence that his expressive conduct satisfied the narrowing construction of *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999)," Court of Appeals declined to address contentions, raised for first time on appeal, that "state presented insufficient evidence of objectively reasonable alarm as required by ORS 163.732(1)(b)" and that "state failed to prove that [the] defendant made any hang-up calls to the victim"); *State v. White*, 53 Or App 856, 861, 632 P2d 1363 (1981) (where MJOA on theft charge was based solely on contention that there was insufficient evidence that the "defendant, rather than another individual, was responsible for the theft," Court of Appeals refused to entertain the defendant's newly advanced "wrong victim" challenge to sufficiency of state's proof). *See generally State v. Paragon*, 195 Or App 265, 268, 97 P3d 691 (2004) ("A motion for judgment of acquittal

does not automatically encompass a challenge to the sufficiency of the evidence. The motion must state the specific theory on which the state's proof was insufficient.").

The prudential imperatives underlying those requirements were not satisfied here. Defendant, in moving for a judgment of acquittal on the criminal mischief charge, raised only one specific and unadorned contention: The state had failed to prove that "there's any damage to the vehicle of any kind." The trial court properly rejected defendant's sole contention because, as defendant now acknowledges, ORS 164.345(1) does not require proof of "damage." On appeal, defendant now raises the qualitatively different contention that the state's proof was legally insufficient not because the state failed to prove "damage" (which it, concededly, was not required to prove) but, instead, because the state failed to prove impairment of the patrol car's ordinary and intended function. Thus, juxtaposing defendant's trial contention with his appellate challenge, it is patent that defendant did not give the trial court a fair opportunity (or, indeed, any opportunity) to consider his present contention and, concomitantly, to obviate the need for an appeal. *See, e.g., O'Hara; Peeples; Wyatt.*

Nor is defendant's belated contention somehow salvaged by reference to the principles expounded and applied in *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). *See Jackson*, 212 Or App at 55 n 4; *accord State v. Timmermann*, 220 Or App 458, 187 P3d 744 (2008); *State v. Smith*, 184 Or App 118, 55 P3d 553 (2002). As we explained in *Jackson*, *Stull*'s principles, including, specifically, as applied in *Smith*, do not permit us to review an unpreserved contention for reversal of the denial of an MJOA where that contention "relates not only to the scope and meaning of statutory language but, even more, to whether particular proof was deficient for reasons never urged to the trial court." *Jackson*, 212 Or App at 55 n 4; *see also Timmermann*, 220 Or App at 466-68 (reiterating *Jackson*'s distinction of *Smith*, but concluding that, "unlike in *Jackson*, except for his reliance on the wrong statute for his defense, [the] *defendant's argument about the deficiency in the state's case*—the undisputed evidence that

he had a valid out-of-state license—*was the same both at trial and on appeal*" (emphasis added)).

Finally, both Judge Edmonds's lead opinion and the dissent contend that, notwithstanding the foregoing principles and precedent, defendant's appellate contention was preserved. The reasoning of both is unavailing.

The lead opinion asserts that "[w]hen defendant argued to the trial court that 'there's been no showing of any damage to the vehicle *of any kind*[,]' he was essentially asking the trial court to address the legal significance of the failure of the state to offer any evidence of the causal effect, if any, of the force that he directed at the door and window of the police car." 229 Or App at 429 (Edmonds, J., lead opinion) (emphasis in lead opinion). That opinion further posits that "[p]resumably, when the trial court ruled, it had the elements of ORS 164.345 in mind." *Id*. at 429.

With respect, the lead opinion credits defendant's use of the term "damage" with a much broader, and qualitatively different, content and function than does defendant himself. As noted, on appeal, defendant correctly acknowledges that "actual damage to the property is not required" to establish that a defendant has "tamper[ed] or interfer[ed] with" property. That is, defendant correctly (now) understands that "damage" and "tamper[ing] or interfer[ing] with" are not coextensive. Rather, the latter is the statutorily requisite *element*, and evidence of the former is one *means*, but not the only means, of establishing the latter. The lead opinion impermissibly conflates that fundamental functional distinction.[4]

Further, and for similar reasons, the lead opinion's invocation of the trial judge's "presumptive" knowledge of the elements of the offense actually militates against preservation. The trial court may very well have understood that proof of "damage" was not required to establish the requisite "tamper[ing] or interfer[ing] with" and, thus, have properly denied the motion based on that correct understanding. In all

---

[4] In that regard, "damage" is "damage"—and the lead opinion's emphasized reliance on "of any kind," 229 Or App at 429 (Edmonds, J., lead opinion), adds nothing to the preservation inquiry.

events, the premise that any challenge to the insufficiency of evidence can be deemed preserved for our review based on a trial court's imputed knowledge of the substance of elements of an offense is irreconcilable with our consistent reiteration of the rigorous requirements of preservation with respect to MJOAs. *See, e.g., Wyatt; Jackson; Shields.*

Finally, the dissent asserts that defendant's present contention is preserved because the MJOA alerted the trial court that defendant was disputing the sufficiency of the evidence with respect to the "tamper[ing] or interfer[ing] with" element. 229 Or App at 444-45 n 1 (Sercombe, J., dissenting). The dissent's discussion concludes with the admonition that to decline to review defendant's present contention "slices the preservation onion too thinly." *Id.*

To be sure, this court has sometimes been criticized, on occasion perhaps properly, for having applied principles of preservation with undue rigor. But this is not such a case. The preservation concern here is not one of "onion slicing" but, instead (to be comparably hackneyed), of "apples and oranges"—and misdirection.

A close hypothetical makes the point: In a prosecution for fourth-degree assault, ORS 163.160(1)(a),[5] the defendant moves for a judgment of acquittal, arguing that the state failed to prove that the victim had bled. The trial court denies the motion. On appeal, the defendant acknowledges, correctly, that the state, in proving "physical injury," ORS 161.015(7),[6] for purposes of ORS 163.160(1)(a), was not required to present evidence of bleeding—but argues, for the first time, that the state's proof was deficient because the victim's pain was of insufficient severity and duration to be "substantial pain" within the meaning of ORS 161.015(7).

In that hypothetical, as here, the defendant's MJOA was explicit, precisely focused, and patently wrong—and,

---

[5] ORS 163.160(1)(a) provides:

"A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another[.]"

[6] ORS 161.015(7) defines "[p]hysical injury" as "impairment of physical condition or substantial pain."

thus, properly denied by the trial court. In that hypothetical, as here, on appeal, the defendant, having acknowledged that the sole ground for the MJOA that was presented for the trial court's consideration was wrong, raised an entirely different argument—thus, the misdirection. In that hypothetical, as here, if we were to reverse, we would be holding that a trial judge who had correctly denied the MJOA had somehow erred.

Consistently with the prudential imperatives of *Wyatt*, if faced with that hypothetical scenario, we would not countenance such misdirection. This case is no different.

The judgment of conviction for third-degree criminal mischief is properly affirmed.

Landau and Schuman, JJ., join in this concurrence.

**SERCOMBE, J.,** dissenting.

I respectfully dissent. ORS 164.345 defines the crime of criminal mischief in the third degree to require that, "with intent to cause substantial inconvenience to the owner or to another person, * * * [a] person tampers or interferes with property of another." The issue in this case is the meaning of "tampers or interferes" under that statute. Based largely on a reference in the legislative history of ORS 164.345 that the existence of property damage is not necessary to prove the crime, and a dictionary definition of the word "interfere" as including "to come in collision," the lead opinion concludes that "ORS 164.345 encompasses more than circumstances where the property of another is affected or damaged." 229 Or App at 433 (Edmonds, J., lead opinion). According to the lead opinion, a person can "tamper or interfere" with property without producing any effect upon the property at all, merely by producing an "unlawful collision or contact" with the property. 229 Or App at 435 (Edmonds, J., lead opinion). I disagree with the lead opinion's conclusion that interference with property under ORS 164.345 can occur without *any* effect on the property. The lead opinion's proposed "unlawful collision or contact" test is not moored in the text, context, or legislative history of the law. Moreover, the application of the "unlawful collision or contact" test criminalizes benign conduct, a result that surely was not intended by the legislature in enacting the provision.

In my view, the meaning of ORS 164.345 is apparent from its text and from the plain and ordinary meaning of the words "tampers or interferes." Under a plain meaning analysis, a person "tampers or interferes with property" by producing an effect on the property, *i.e.*, by negatively affecting the property's condition or usefulness. That plain meaning of "tampers or interferes" is corroborated by the context of the statutory phrase. The legislature more likely intended "tampers or interferes" to require an actual effect on property because it required a parallel intent to cause "substantial inconvenience to the owner [of property] or to another person" in order to commit the crime. That "inconvenience" pertains to a potential change in the status of property so as to make the enjoyment or use of the property less convenient, a result that necessarily requires an effect on property. The actual effect required by ORS 164.345 (a tampering or interference with property) is likely to be similar to the required intended effect by the *mens rea* element of the crime (a substantial inconvenience in the sense of making the enjoyment or use of the property less convenient). Moreover, the legislature defined related crimes that proscribe property "interference" to require an effect on property in order to prove a violation. Finally, the legislative history of the provision suggests that ORS 164.345 was intended to replace older "criminal tampering" and "malicious mischief" statutes, laws that regulated activities that affected the utility or functioning of various properties, and that ORS 164.345 was intended to have the same ambit. Because there was no evidence in this case that kicking the interior rear door and window of the police cruiser affected the vehicle's condition or usefulness, defendant's motion for a judgment of acquittal should have been granted.

Defendant was convicted of criminal mischief in the third degree under ORS 164.345, which provides:

> "(1)   A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person *tampers* or *interferes* with property of another."

(Emphasis added.) The question presented in this case is whether the evidence that defendant kicked the inside of a patrol car is sufficient as a matter of law to prove that he tampered or interfered with property within the meaning of ORS 164.345.[7]

---

[7] I agree with the lead opinion that the motion for judgment of acquittal claiming that "[t]here has been no showing there's any damage to the vehicle of any kind" and "there's [not] enough there" is sufficient to preserve a claim that the state failed to prove that the defendant affected the property. A claim that a motion for judgment of acquittal was wrongly decided is preserved when a party identifies for the trial court the relevant legal issue and the appropriate facts that are material to the application of that legal standard and presents an argument to the trial court that is qualitatively similar to the position advanced on appeal. In this case, defendant's contention was specific to the part of ORS 164.345 that requires that a "person tampers or interferes with property of another," and not to either of the other two elements of the crime (*mens rea* and lack of right to interfere). *See State v. Shields*, 184 Or App 505, 509 n 1, 56 P3d 937 (2002) (argument that one particular element of stalking statute was not proven (threatening communication) was not sufficient to preserve an argument that a different element of the statute (requirement of objectively reasonable alarm) was not shown). Thus, defendant identified the specific legal question presented to the court by the motion—whether he "tamper[ed] or interfere[d]" with the police cruiser.

Second, defendant identified the relevant facts—"kicking a car door and window." The issue presented to the court was whether the "tampers or interferes" element was satisfied by the specific evidence presented by the state ("kicking a car door and window")—an issue that was primarily one of law, involving the correct interpretation of the statutory text. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (higher level of judicial engagement when the proper interpretation of a statute is implicated).

Defendant argued that the evidence was insufficient as a matter of law, that there was no "damage * * * of any kind." The trial court had to construe ORS 164.345 and determine what necessary effect is required by "tampers or interferes" in order to rule on defendant's motion. Similarly, the prosecution had the opportunity to advance whatever argument it wished on the nature of that necessary effect. We are to determine preservation of error "in light of the purposes of fairness and efficiency that underlie the requirement." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998). It is neither unfair to the trial court or the state nor inefficient for us to decide the discrete question presented below—whether specific facts created a "tampers or interferes with property" effect.

Finally, the argument presented to the court below was that the state did not show that there was "damage of any kind" to the property, an argument that is not "qualitatively different" than the contention on appeal that the state did not show a sufficient effect on the property by defendant's conduct. *State v. Jackson*, 212 Or App 51, 54, 157 P3d 239, *rev den*, 343 Or 206 (2007) (stating test). *See also State v. Taylor*, 198 Or App 460, 469, 108 P3d 682 (2005) ("the appealing party's statements before the trial court must have alerted the trial judge and opposing counsel to the substance of the position that is advanced on appeal"). In *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004), the Supreme Court warned against problems that would result if the "preservation onion is sliced too thinly." Judge Haselton concludes that defendant's contention that the "tampers or interferes with property" element of the crime is not satisfied because the identified facts do not show a

We discern the legislative intent by the use of the term "tampers or interferes" in ORS 164.345 by examining the text and context of the statute, giving words of common usage their "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The context of a statute includes other provisions of the same law, as well as related statutes. *Id.* We look to the legislative history of the statute for evidence of legislative intent when that history is useful to the analysis. ORS 174.020; *State v. Gaines*, 346 Or 160, 170-71, 206 P3d 1042 (2009).

The plain meaning of "tampers or interferes" with property is to produce an effect on property that changes its physical nature or limits the property's usefulness. That effect could include circumstances beyond actual physical damage to the property, such as the manner in which property is used or consumed. The relevant definition of the word "tamper" in the context of the statute is "to interfere so as to weaken or change for the worse." *Webster's Third New Int'l Dictionary* 2336 (unabridged ed 2002). Similarly, in this context, the pertinent definition for the word "interfere" is "to act reciprocally so as to augment, diminish, or otherwise affect one another." *Id.* at 1178. Analogously, the definition of "interference" includes "the act of meddling in or hampering an activity or process." *Id.* Each of those definitions requires an *effect* on an activity or property by the defined conduct— that the property or activity be weakened, changed, opposed, diminished, or hampered. Thus, the ordinary meaning of "tampers or interferes" with property requires that there be an effect on the property so as change its physical nature or to inhibit its usefulness.

That meaning of "tampers or interferes" is consistent with the statutory context of the phrase. The first relevant context is another element of the same crime, the *mens rea* required under ORS 164.345—the required "intent to cause substantial inconvenience to the owner or to another person." An "inconvenience" is "the quality or state of being

---

sufficient effect on the property is not preserved merely because defendant described that necessary effect as "damage of any kind," rather than "bad effect of any kind." 229 Or App at 439 (Haselton, J., concurring). I believe that Judge Haselton's analysis slices the preservation onion too thinly.

unsuited or unadapted to personal needs or comfort \* \* \* something that gives trouble, embarrassment, or uneasiness : something that disturbs or impedes." *Webster's* at 1145. That "inconvenience" relates to particular property. The statute requires the intended inconvenience be "to the owner" of property or "to another person," also with respect to the property. Therefore, to establish criminal mischief in the third degree, the state must show that defendant had the intent to "cause substantial inconvenience," *i.e.*, to make the property "unsuited or unadapted to the personal needs or comfort" of another. It stands to reason that the *actual* effect required by ORS 164.345 ("tampers or interferes with property of another") must be consistent with that necessary *intended* effect ("to cause substantial inconvenience to the owner or to another person"). The required intended effect and the required actual effect are to cause property to become "unsuited or unadapted to the personal needs or comfort" of the owner of the property or another.

That plain meaning of "interferes" in ORS 164.345 is also corroborated by the way "interfere" is used in ORS 164.365, a related statute that defines the elements of criminal mischief in the first degree. The crime of criminal mischief in the first degree requires an "intent to damage property," together with actual damage to property above a particular dollar amount, damage that either is produced by described means or is inflicted on a particular type of property. One of the variants of the proscribed effects or means of property damage is damage to property "[b]y intentionally *interfering with*, obstructing or adulterating in any manner the service of a public utility, telecommunications carrier, railroad, public transportation facility or medical facility[.]" ORS 164.365(1)(a)(F). Under that statute, "interfering with" a service requires an effect on the service, in the same way that "obstructing" or "adulterating" the service requires such an effect.

In the same vein, ORS 164.365(1)(b) defines criminal mischief in the first degree to include an intent to damage property where the person "having no right to do so nor reasonable ground to believe that the person has such right"

"[i]ntentionally uses, manipulates, arranges or rearranges the property of a public utility, telecommunications carrier, railroad, public transportation facility or medical facility used in direct service to the public so as to *interfere* with its efficiency."

(Emphasis added.) Under that part of the statute, to "interfere" with property requires an actual effect on its efficiency through the use, manipulation, arrangement, or rearrangement of the property. It stands to reason that the meaning of "interfere" for purposes of criminal mischief in the first degree under ORS 164.365—to require a produced effect on property—is the same as the meaning of "interfere" for purposes of criminal mischief in the third degree under ORS 164.345.

Finally, the term "tampers or otherwise interferes" is used in another related statute, ORS 164.373 (defining the crime of tampering with cable television equipment). ORS 164.373(1)(a) provides that a person commits the crime if the person

"[k]nowingly *tampers or otherwise interferes* with or connects to by any means, whether mechanical, electrical, acoustical or other means, any cable, wire or other device used for the distribution of cable television service, without authority of the provider of such service[.]"

(Emphasis added.) As used in that related statute, "tampers or otherwise interferes" means changing the physical characteristics or functioning of the affected property, again requiring an actual effect on the use of property. That meaning of "tampers or otherwise interferes" in ORS 164.373, a later-adopted but related statute, again suggests a common legislative intent in the use of "tampers or interferes" in ORS 164.345—the production of an effect on property, something that inhibits the use, function, or value of property. All of those contextual clues—the intended effect required by the *mens rea* element of the crime of criminal mischief in the third degree and the use of "interferes" and "tampers or otherwise interferes" in related crimes—corroborate the plain meaning of "tampers or interferes" in ORS 164.345.

The legislative history of ORS 164.345 supports a construction of the statute that requires an effect on property

by tampering or interfering. ORS 163.345 was enacted in 1971 as part of the revision of the criminal code. Or Laws 1971, ch 743, §§ 145-47. ORS 164.345 combined older "criminal tampering" and "malicious mischief" statutes. As such, when ORS 164.345 was enacted, the statutory provisions that had previously existed prohibiting "interference" with various types of property rights were repealed.[8] That history is explained in the official commentary to the criminal law revision:

> "[ORS 164.345(1) was] intended to cover the type of conduct that is not thievery, but rather amounts to unauthorized and unlawful interference with the property of another. Damage to property is not an element of this crime.
>
> "* * * * *
>
> "Taken as a whole, the proposed draft combines the features of 'criminal tampering or interference' with those of 'malicious mischief.' "

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 145-147, 153 (July 1970).

The lead opinion reasons that ORS 164.345 does not require any effect on property, because the commentary to the statute noted that "[d]amage to property is not an element of this crime." The lead opinion reads into that comment "an absolute and plenary declaration that any form of damage to property, including loss of use of property, is not intended by the legislature to constitute an element of the crime." 229 Or App at 434 (Edmonds, J., lead opinion). The lead opinion reasons that "damage" to property is more than

---

[8] "The sections dealing with criminal mischief encompass 'interfering or tampering' with property of another and will replace those parts of the present statutes dealing with such activity. (*See* §§ 145-147 infra)." Commentary to Criminal Law Revision Commission Proposed Criminal Code, Final Draft and Report § 133, 141-42 (July 1970). The statutes cited by the commentary include, among others, ORS 164.620, interference with gas and electric appliances; ORS 164.630, interference with telegraphic equipment and service; and ORS 164.635, interference with coin telephones. Another replaced statute, ORS 164.610 (1969), prohibited interference with water rights and appliances. An examination of those replaced statutes suggests that "interference" with property interests or rights included only activities that affected the utility or functioning of the property interest.

a physical change to the property, but also includes loss of use of the property, citing the definition of "economic damages" at ORS 31.710(2)(a) as including "necessarily incurred costs due to loss of use of property." 229 Or App at 430 n 1 (Edmonds, J., lead opinion).

With respect, the meaning of recoverable "damages" in tort litigation has nothing to do with the meaning of "damage to property" as used in the commentary or the criminal mischief statutes. *Cf. Deupree v. ODOT*, 173 Or App 623, 628, 22 P3d 773 (2001) (" 'damages' * * * generally refers to monetary compensation for a loss or harm," whereas "the singular form 'damage' * * * normally refers to a loss, injury, or harm resulting from an act or omission"). The commentary note contrasts the effect on property required by the crime of third-degree criminal mischief ("tampers or interferes with property of another") with the effect on property required by the crime of second-degree criminal mischief ("damages property in an amount exceeding $100") or the effect on property required by the crime of first-degree criminal mischief ("damages or destroys property" or "uses, manipulates, arranges or rearranges the property * * * so as to interfere with its efficiency"). *Compare* ORS 164.345 *with* ORS 164.354 and ORS 164.365. It provides that damage to property is required to prove the crimes of criminal mischief in the first and second degrees, but not criminal mischief in the third degree.

Instead, the comment merely means that "tampers or interferes" can be shown by an effect on property that includes, *but is not limited to*, a physical change to the property or "damage." That is, criminal mischief in the third degree could result from conduct that causes property damage of $100 or less—or, for that matter, no damage at all provided that the conduct otherwise affects the property. The comment is consistent with my reading of the statute in that it recognizes that a violation of the statute could result from conduct that affects property but does not actually cause physical damage to the property.

That scope of the statute was discussed by the criminal law revision committee before the 1971 legislative session. Specifically, Donald L. Paillette, the project director, suggested that the statute

> "would cover the type of conduct that might not result in a person stealing any type of service or might not result in any damage to the utility or the property but was still interfering with the property in some manner. He said that the section was an attempt to include every protection that existed in the present statutes with respect to interfering with a utility or property without actually obtaining anything."

Minutes, Criminal Law Revision Commission, May 17, 1968, A8. In addition, the following examples were given of conduct to which the proposed section might apply: "Tampering with railroad ties or switches, tampering with a bicycle so the brakes would [not] work and removing cattle guards so the cattle were turned loose." *Id.* The minutes evidence the legislature's intent that ORS 164.345(1) prohibit the harm that results to a property owner when someone meddles with his or her property so as to disturb or impede its use or function. By analogy to an example given in committee, if defendant had engaged in conduct that resulted in impairing the function of the patrol car, such as draining its gas tank so that it could not be driven, that would be tampering similar to disabling a bicycle's brakes; merely kicking the inside of the car does not interfere with or tamper with the car's usefulness to its owner when the kicking does not damage the door or impede the use or function of the car door.

The lead opinion reads the legislative history to show that a violation of ORS 164.345 includes "more than circumstances where property of another is affected or damaged." 229 Or App at 433 (Edmonds, J., lead opinion). The lead opinion does not identify what those other circumstances are, so it is difficult to assess the legislative history's support for the unstated proposition. Paillette's testimony, however, suggests that the scope of the statute "would cover the type of conduct that * * * might not result in damage to * * * property * * * but was still interfering with the property in some manner." To me, that testimony supports the conclusion that the statute *only* includes circumstances where property is damaged *or* affected in some manner. The legislative history is straightforward. ORS 164.345 was intended to proscribe conduct that damaged property or otherwise affected the property in some negative manner.

In sum, the plain meaning, statutory context, and legislative history of ORS 164.345 establish that a person "tampers or interferes with property of another" by physically or functionally affecting property in some manner, in particular, by negatively affecting the property's condition or usefulness. The lead opinion disavows any such needed effect. It concludes that "tampers or interferes" with property only means to cause "an unlawful collision or contact with another's property" without any effect. 229 Or App at 435 (Edmonds, J., lead opinion). Under that test, then, criminal mischief in the third degree occurs when a person comes in contact or touches property without a privilege to do so and with an intent to cause substantial inconvenience. Under the lead opinion's construction of ORS 164.345, the crime of criminal mischief in the third degree arguably occurs in the following examples:

1.  A bored airplane traveler repeatedly kicks the back of the seat in front of her in order to substantially provoke its occupant, only to discover that the seat is empty;

2.  A professional golfer, frustrated with the competitive score of his game, picks up his opponent's ball in order to surreptitiously throw it into the rough, but changes his mind and returns the ball to its original lie;

3.  A middle-school student starts to play the game of "ding-dong-ditch" by repeatedly ringing someone's doorbell and running away before the person answers, touches the doorbell, but panics and runs away after seeing movement inside of the house;

4.  A prankster unsuccessfully tries to close a gate to a road in order to greatly inconvenience an oncoming automobile, but the gate won't budge.

The crime only requires an *intent* to cause substantial inconvenience. Under the lead opinion's construction of the law, the crime of criminal mischief in the third degree is committed by a frustrated plan to manipulate property so as to cause substantial inconvenience.

The lead opinion, in short, construes ORS 164.345 to forbid conduct (touching property) that causes no harm, that produces no damage or loss of utility to property, but is criminal only because the touching is done with an intent to cause substantial inconvenience. In my view, that construction of the statute offends two of the purposes of our criminal code as set out in ORS 161.025: to "forbid and prevent conduct that unjustifiably and inexcusably inflicts or threatens substantial harm to individual or public interests," ORS 161.025(1)(b); and to "give fair warning of the nature of the conduct declared to constitute an offense and of the sentences authorized upon conviction," ORS 161.025(1)(c). As I say, touching property does not inflict or threaten substantial harm. And there is an enormous amount of relatively benign conduct that an ordinary citizen would be surprised to know was included within the scope of ORS 164.345 and punishable by 30 days in jail, ORS 161.615(3), if ORS 164.345 is construed to proscribe unprivileged touching of property with an intent to cause substantial inconvenience. ORS 164.345 should be construed to be consistent with the purposes of the criminal code, and to require actual harm to property or property use.

I cannot agree that the mere kicking of the inside of a patrol car was an act intended by the legislature to be punished as criminal mischief. Although it may be obnoxious behavior, that act does not impede the use of the patrol car or diminish or change the property for the worse so as to alter its functionality or value. In my view, a person "tampers or interferes" with property under ORS 164.345(1) only by causing a negative effect on the property.

Because no evidence was introduced that defendant's conduct produced any effect on the patrol car, the trial court erred in refusing to grant defendant's motion for judgment of acquittal on the charge of criminal mischief in the third degree. I dissent from the lead opinion's conclusion to the contrary.

Brewer, C. J., and Armstrong, J., join in this dissent.